**FOSLIP PHARMACEUTICALS, INC., Foslip of California, Inc., Jay W. Hansen, and William D. Hansen, Plaintiffs,**

v.

**METABOLIFE INTERNATIONAL, INC., Michael J. Ellis, William R. Bradley, Joseph M. Ellis, Jr., ST & T, Inc., Michael J. Scott, James Cameron, and Ron Sanculi, Defendants.**

### No. C 99–4108–MWB.

United States District Court,
N.D. Iowa,
Western Division.

April 3, 2000.

Roger T. Stetson (argued remand issue), Michael R. Reck (argued support of motion to dismiss by Joseph Ellis), Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, IA, for Metabolife 356, Michael Ellis, William R. Bradley, Joesph M. Ellis, Jr.

Alan E. Fredegrill, Heidman, Redmond, Fredregrill, Patterson, Plaza, Dykstra & Pahl, L.L.P., Souix City, IA, for ST&T, Inc., Michael Scott.

Donald J. Hemphill, Hemphill Law Office, Spencer, IA, for Ron Sanculi.

David P. Matthews, Abraham, Watkins, Nichols, Sorrels, Mathes & Friend, Houston, TX, Robert W. Sackett, Local Counsel, Milford, IA, for plaintiffs.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION TO REMAND AND MOTIONS TO DISMISS BY DEFENDANTS JOSEPH M. ELLIS, JR., ST & T, INC., AND MICHAEL J. SCOTT

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ............................................. 894
 A. Factual Background ................................... 894
 B. Procedural Background ............................... 895

II. LEGAL ANALYSIS .......................................... 898
 A. Subject Matter Or Personal Jurisdiction First? ...... 898
 B. The Motions To Dismiss .............................. 899
 1. Long-arm authority ............................... 900
 2. Minimum Contacts ................................. 900
 C. The Plaintiffs' Motion To Remand .................... 900
 1. Removal and remand ............................... 900
 2. Removal and diversity ............................ 901
 a. "Complete diversity" and "fraudulent joinder" ... 901
 b. Test for fraudulent joinder of a defendant ...... 902
 c. Test for fraudulent joinder of a plaintiff ...... 903
 d. Waiver .......................................... 905
 3. The "fraudulently joined" parties here ........... 907
 a. Foslip of California ............................ 907
 b. Ron Sanculi .................................... 909

III. CONCLUSION ............................................. 909

> *Rather fail with honor than*
> *succeed by fraud.*
> —Sophocles

Each side here accuses the other of succeeding by fraud: The plaintiffs claim they were induced into an inequitable settlement of a prior lawsuit by the defendants' fraudulent misrepresentations and non-disclosures of the financial status of a disputed business, and the defendants contend that the plaintiffs have fraudulently joined one of the plaintiffs and one of the defendants simply to defeat federal diversity jurisdiction. Into this tangled web of

allegations of fraud, the court necessarily walks with some trepidation. In the first motion now before the court, the plaintiffs seek remand of this action to state court, contending that the defendants have failed to carry their burden to prove fraudulent joinder in order to sustain removal of this action to federal court. In the other two motions presently before the court, some of the defendants seek dismissal of the action against them on the grounds of lack of personal jurisdiction and failure to plead fraud with sufficient particularity.

## I. INTRODUCTION

### A. Factual Background

Although the procedural footing of this action is complicated, the present motions require only a relatively abbreviated statement of the factual background. In the early 1990s, plaintiff Jay Hansen and defendant Michael Ellis developed an herbal dietary supplement known as "Nepegen." These two parties, with others, formed Foslip Pharmaceuticals, Inc., and Foslip of California, Inc., to market and distribute Nepegen and other products. Defendant Ron Sanculi was hired as an independent distributor by the Foslip entities. However, Jay Hansen and Michael Ellis apparently went their separate ways without Nepegen ever having enjoyed significant marketing success. The corporate status of Foslip Pharmaceuticals, Inc., was allowed to lapse.

The story was different thereafter for Michael Ellis. Michael Ellis, with others, including some of the defendants here, pursued the marketing of a product called "Metabolife 356," which Jay Hansen contends is simply Nepegen under a different name. Ron Sanculi became a distributor for Metabolife 356. Unlike Nepegen, the marketing of Metabolife 356 has been very successful, with annual sales in the millions or hundreds of millions of dollars. However, therein lies the bone of contention: Jay Hansen contends that Michael Ellis usurped the Nepegen product, simply renaming it, and usurped business opportunities that belonged to the Foslip entities.

Consequently, Jay Hansen, along with the other plaintiffs in the present action, brought suit in the Iowa District Court for Clay County on June 4, 1998, against Michael Ellis and all of the defendants in the present action, with the exception of James Cameron. In that lawsuit, referred to herein as the "Original State Court Action," the plaintiffs asserted claims of breach of fiduciary duty, theft and misuse of trade secrets and proprietary information, tortious interference with contracts and business relations, and negligence and gross negligence. The relief sought in the Original State Court Action included establishment of an equitable trust, as well as actual and punitive damages.

The Original State Court Action was settled in the fall of 1998, pursuant to a settlement agreement negotiated and entered into by and between Jay Hansen, William Hansen, Foslip Pharmaceuticals, Inc., and Foslip of California, Inc., on the one hand, and Metabolife International, Inc., Michael J. Ellis, and William R. Bradley, on the other. However, the plaintiffs in the present action contend that, in those settlement negotiations, Michael Ellis represented that sales by Michael Ellis's new company, Metabolife International, Inc., had amounted to only $27 million in 1997 and that Metabolife 356 was not in fact identical to Nepegen. Thus, the plaintiffs agreed to settle the Original State Court Action for only $4 million, transferring to the defendants any interest the plaintiffs had in the Foslip entities, Nepegen, Metabolife 356, and certain trademarks. Michael Ellis agreed not to use the marketing slogan "Feel the Energy." The settlement agreement called for the dismissal of the Original State Court Action, with prejudice, as to *all* defendants in that action, even though only Metabolife International, Michael Ellis, and William Bradley had been involved in negotiating the settlement or were identified as parties to it. Pursuant to the settlement agreement, the Original State Court Action was dismissed with prejudice as to all defendants on February 11, 1999.

The plaintiffs in the present action allege that they subsequently learned that Michael Ellis had misrepresented that there were differences between Nepegen and Metabolife 356, although the products were in fact identical, and had grossly misrepresented the sales of Metabolife 356 during 1997, which had in fact amounted to several hundred million dollars. Therefore, on November 3, 1999, the plaintiffs brought the present action in the Iowa District Court for Clay County (the "Present Action"). With this brief recitation of the factual background to the present dispute, the court turns to the procedural background to the Present Action.

### B. Procedural Background

As mentioned just above, plaintiffs Foslip Pharmaceuticals, Inc.,[1] Foslip of California, Inc., Jay W. Hansen, and William D. Hansen, filed the Present Action on November 3, 1999. The defendants in the Present Action are Metabolife International, Inc., Michael J. Ellis, William R. Bradley, Joseph M. Ellis, Jr., ST & T, Inc., Michael Scott, James Cameron, and Ron Sanculi. The only party to the Present Action who was not a party in the Original State Court Action is defendant James Cameron.

Plaintiff Foslip Pharmaceuticals, Inc., is an Iowa corporation with its principal place of business in Iowa, and William D. Hansen is a resident of Iowa. Plaintiff Foslip of California, Inc., is a California corporation with its principal place of business in San Diego, California, and plaintiff Jay W. Hansen is now a resident of Missouri. On the other side of things, only defendant Ron Sanculi is a resident of the State of Iowa. Defendant Metabolife Inter-

national, Inc., is a California corporation, with its principal place of business in San Diego, California. Michael J. Ellis, William R. Bradley, Joseph M. Ellis, Jr., and Michael Scott are all alleged to be and concede that they are residents of California, and ST & T, Inc., is also a California corporation. James Cameron resides in Colorado, while Ron Sanculi resides in Iowa.

The plaintiffs allege that the individual defendants "reside" in California, Colorado, and Iowa, respectively, while the defendants assert in their notice of removal that they both "reside" and are "domiciled" in the states indicated. The court finds that these defendants are in fact "citizens" of the states indicated in the absence of any specific allegations to the contrary. See 28 U.S.C. § 1332 (establishing original federal jurisdiction over actions involving diversity of "citizenship"); 28 U.S.C. § 1441(a) (providing for removal to federal court of civil actions "of which the district courts of the United States have original jurisdiction"); id. at (b) (providing that actions not founded on a federal question "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought") (emphasis added); Walker v. Norwest Corp., 108 F.3d 158, 161 n. 3 (8th Cir.1997) (" 'For purposes of diversity jurisdiction, the terms "domicile" and "citizenship" are synonymous.' ") (quoting Sheehan v. Gustafson, 967 F.2d 1214, 1215 (8th Cir.1992), which in turn quotes Yeldell v. Tutt, 913 F.2d 533, 537 (8th Cir.1990)).

The following table summarizing the citizenship of the parties may be of assistance:

---

1. The registered agent of Foslip Pharmaceuticals, Inc., filed an application for reinstatement of the corporation on August 19, 1998. As mentioned above, the corporate status of Foslip Pharmaceuticals was allowed to lapse, and the corporation was dissolved by the State of Iowa in administrative proceedings on August 18, 1997.

| CITIZENSHIP | PLAINTIFFS | DEFENDANTS |
|---|---|---|
| California | Foslip of California | Metabolife International, Inc. <br> Michael J. Ellis <br> William R. Bradley <br> Joseph M. Ellis, Jr. <br> Michael Scott |
| Iowa | Foslip Pharmaceuticals, Inc. <br> William D. Hansen | Ron Sanculi |
| Missouri | Jay W. Hansen | |
| Colorado | | James Cameron |

The precise nature of the Present Action is not immediately apparent. The complaint is denominated a "Petition for Declaratory Judgment." Nevertheless, Division I of the complaint is denominated "Recission of the Settlement Agreement," and contains allegations of breach of fiduciary duty, fraudulent misrepresentation and non-disclosure, and breach of contract (*i.e.*, breach of the settlement agreement in the Original State Court Action). Complaint, Div. I, ¶¶ 24–27. Division I also states that the plaintiffs "ask for" declaratory judgment that the "Defendants" fraudulently misrepresented facts upon which the plaintiffs relied in agreeing to settle the Original State Court Action, breached the terms of the settlement of that action, and breached their fiduciary duties "with fraud and misrepresentation," and also "ask[s] for" *punitive* damages for defendants' "fraudulent acts." Complaint, Div. I, ¶¶ 28–31. The Prayer for Relief in the complaint seeks declarations, in subdivisions (a) through (c), that are similar to those "ask[ed] for" in Division I of the

complaint, but also prays for additional relief, including a prayer that the court enter an order "rescinding the parties['] prior settlement agreement," Complaint, Prayer at (d); "awarding *actual damages and punitive damages* to Plaintiffs for Defendants' fraudulent acts," *id.* at (e) (emphasis added); and "awarding Plaintiffs their costs and attorney fees accrued in this suit, pre and post judgment interest as prescribed by law, and granting such other and further relief as it deems just." *Id.* at (f). Thus, it appears that, in the Present Action, in addition to declaratory relief, the plaintiffs seek equitable relief of rescission of the settlement agreement in the Original State Court Action and both actual and punitive damages for fraud (but not for breach of the settlement agreement).[2]

On December 8, 1999, all of the defendants removed the Present Action to this federal court, asserting that both defendant Ron Sanculi and plaintiff Foslip of California had been fraudulently joined to defeat federal diversity jurisdiction. On

---

**2.** The nature of the present action is made all the more confusing by the fact that, from time to time, the parties have referred to the Present Action as an action to "set aside" the settlement agreement in the Original State Court Action and to "vacate" the order of dismissal in that action. Any action to "vacate" the judgment of dismissal with prejudice in the Original State Court Action would have to be brought in that action; indeed, the plaintiffs contend that they have now moved

to vacate that judgment in the Original State Court Action itself. However, because the propriety of removal is judged at the time of removal, *see infra*, the plaintiffs' subsequent attempt to vacate the judgment in the Original State Court Action does not provide a basis for "remand," as the plaintiffs suggest in their reply brief in support of remand, although it might provide a basis for this court to stay the present action, out of comity to the state court.

January 7, 2000, defendants Metabolife International, Inc., Michael J. Ellis, and William Bradley jointly answered the removed complaint, while defendant Ron Sanculi filed a separate answer to the removed complaint the same day. Defendant James Cameron has neither appeared in this action nor answered the complaint in either state or federal court.[3]

Also on January 7, 2000, the plaintiffs filed the first of the motions presently before the court, their motion to remand this action to state court pursuant to 28 U.S.C. § 1447(c). In their motion, the plaintiffs contend that this court lacks subject matter jurisdiction, and consequently must remand the action to state court, because defendant Ron Sanculi is properly a party to this action, and his presence destroys complete diversity between plaintiffs and defendants. The plaintiffs did not address in their motion the defendants' contention in their Notice of Removal that Foslip of California has also been fraudulently joined as a plaintiff. Instead, after the court raised the question of whether Foslip of California also destroys diversity during oral arguments, the plaintiffs responded to the court's question and the defendants' contentions on that issue.

On January 13, 2000, defendant Joseph Ellis filed the second of the motions presently before the court, his motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Joseph Ellis contends that he has no connection with the State of Iowa and thus is not subject to the personal jurisdiction of this court. Also on January 13, 2000, defendants ST & T and Michael Scott jointly filed the third motion at issue, their motion to dismiss pursuant to Rules 9(b), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. ST & T and Michael Scott contend that the plaintiffs have failed to plead fraud against them with the particularity required by Rule 9(b), and thus have failed to state a claim on

which relief can be granted, entitling them to dismissal pursuant to Rule 12(b)(6). They also contend, as does Joseph Ellis, that they have no connection with the State of Iowa, and therefore are not subject to the personal jurisdiction of this court, which they assert entitles them to dismissal pursuant to Rule 12(b)(2). The plaintiffs never filed resistances to these motions to dismiss, nor did they seek additional time to do so, despite the fact that the plaintiffs had notice for some time that consolidated oral arguments were set on all three motions, and despite their strenuous prosecution of their own motion to remand this action to state court. At oral arguments, the plaintiffs conceded that they have no good faith resistance to the motions to dismiss these three defendants for lack of personal jurisdiction.

After extended briefing on the plaintiffs' motion to remand, the court heard oral arguments on the plaintiffs' motion to remand and the two motions to dismiss on March 28, 2000. All plaintiffs were represented by David P. Matthews of Abraham, Watkins, Nichols, Sorrels, Matthes & Friend in Houston, Texas, and local counsel Robert W. Sackett of Sackett & Sackett, P.C., in Milford, Iowa. Defendants Metabolife 356, Michael Ellis, William R. Bradley, and Joseph M. Ellis, Jr., were represented by Roger T. Stetson, who argued the remand issue, and Michael R. Reck, who argued in support of the motion to dismiss by Joseph Ellis. Both Mr. Stetson and Mr. Reck are attorneys with Belin Lamson McCormick Zumbach Flynn, P.C., in Des Moines, Iowa. Defendants ST & T, Inc., and Michael Scott were represented by Alan E. Fredregill of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., in Sioux City, Iowa. Defendant Ron Sanculi was represented by Donald J. Hemphill of the Hemphill Law Office in Spencer, Iowa. As mentioned above, defendant James Cameron

---

**3.** The record does not reflect that James Cameron has ever been properly served with the complaint.

has neither appeared in this action nor answered the complaint in either state or federal court, and therefore did not participate in the oral arguments.

The motion to remand and the two motions to dismiss are now fully submitted and the court turns to the disposition of those motions.

## II. LEGAL ANALYSIS

### A. Subject Matter Or Personal Jurisdiction First?

The two motions to dismiss now before the court challenge the court's personal jurisdiction over three of the defendants, while the plaintiffs' motion to remand challenges the court's subject matter jurisdiction over this action in its entirety. As the United States Supreme Court explained in a recent decision, "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).

In *Ruhrgas AG,* the Supreme Court addressed two questions that are now presented to this court by motions challenging both subject matter jurisdiction and personal jurisdiction: "If ... jurisdiction generally must precede merits in dispositional order, must subject-matter jurisdiction precede personal jurisdiction on the decisional line? Or, do federal district courts have discretion to avoid a difficult question of subject-matter jurisdiction when the absence of personal jurisdiction is the surer ground?" *Id.* at 577–78, 119 S.Ct. 1563. As in this case, the Supreme Court was confronted with a civil action commenced in state court and removed to federal court. *Id.* at 578, 119 S.Ct. 1563. The specific question presented to the Supreme Court was " '[w]hether a federal district court is absolutely barred in all circumstances from dismissing a removed case for lack of personal jurisdiction without first deciding subject-matter jurisdiction.' "

*Id.* (quoting the petition for certiorari). The Court's precise holding was as follows:

> We hold that in cases removed from state court to federal court, as in cases originating in federal court, there is no unyielding jurisdictional hierarchy. Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter, but there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry. The proceeding before us is such a case.

*Ruhrgas AG,* 526 U.S. at 578, 119 S.Ct. 1563. Is the proceeding before this court also such a case?

Fortunately, the Supreme Court's decision in *Ruhrgas AG* also provides guidance on that question, by explaining in what circumstances the district court "appropriately accords priority to a personal jurisdiction inquiry":

> In accord with Judge Higginbotham, we recognize that in most instances, subject-matter jurisdiction will involve no arduous inquiry. *See [Marathon Oil Co. v. Ruhrgas AG,]* 145 F.3d [211,] 229 [(5th Cir.1998)] ("engag[ing]" subject-matter jurisdiction "at the outset of a case ... [is] often ... the most efficient way of going"). In such cases, both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first. *See Cantor Fitzgerald, L.P. v. Peaslee,* 88 F.3d 152, 155 (C.A.2d Cir.1996) (a court disposing of a case on personal jurisdiction grounds "should be convinced that the challenge to the court's subject-matter jurisdiction is not easily resolved"). Where, as here, however, a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction.

*Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 587–88, 119 S.Ct. 1563, 143 L.Ed.2d

760 (1999). Thus, with the guidance of *Ruhrgas AG*, this court must consider in which order the circumstances presented here suggest the court should address the questions of personal jurisdiction and subject matter jurisdiction.

■ As the discussion below will show, the question of the court's subject matter jurisdiction involves, if not an "arduous inquiry," certainly a rather complicated one, regarding "fraudulent joinder" of a defendant and the more unusual question of "fraudulent joinder" of a plaintiff. *Id.* at 587, 119 S.Ct. 1563. Thus, the "alleged defect in subject-matter jurisdiction raises a difficult and novel question." *Id.* at 588, 119 S.Ct. 1563. On the other hand, in the face of plaintiffs' concession that they have no good faith resistance to the motions to dismiss for lack of personal jurisdiction, this court "has before it a straightforward personal jurisdiction issue presenting no complex question of state law." *Id.* Moreover, plaintiffs' concession suggests that, by considering personal jurisdiction first, this court would not be disregarding "sensitivity to state courts' coequal stature," as acting upon the plaintiffs' concession will not deprive the state court of the opportunity to rule on a significant question of state law. *Id.* at 587, 119 S.Ct. 1563. Although this court finds that the circumstances in the Present Action are different from those in *Ruhrgas AG*, to the extent that lack of personal jurisdiction here would dispose of the case as to only two of several defendants, instead of disposing of the case in its entirety, as in *Ruhrgas AG*, that difference does not appear to be a determinative distinction, *i.e.*, it does not necessarily suggest that the court should turn first to the question of subject matter jurisdiction. Rather, because personal jurisdiction is dispositive of the entire case *against the defendants challenging personal jurisdiction*, the reasons identified in *Ruhrgas AG* for considering the motions challenging personal jurisdiction first still obtain here. Under *Ruhrgas AG*, therefore, this court would not "abuse its discretion by turning directly to personal jurisdiction." *Id.* at 588, 119 S.Ct. 1563.

Consequently, the court will first briefly consider the motions to dismiss certain defendants for lack of personal jurisdiction, before turning to the more complicated question of whether a lack of subject matter jurisdiction requires remand of this entire action to state court.

### B. The Motions To Dismiss

As mentioned above, defendant Joseph Ellis has moved to dismiss this action as to him pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, asserting that this (or any other Iowa court) lacks personal jurisdiction over him, because he has no connection with the State of Iowa. In a separate motion, defendants ST & T, Inc., and Michael Scott raise the same contention of lack of personal jurisdiction as to them. At oral arguments, the plaintiffs conceded that they have no good faith resistance to the motions to dismiss these three defendants for lack of personal jurisdiction.

This court recently summarized the requirements of personal jurisdiction, and the appropriate analytical process to determine whether a federal court has such jurisdiction, as follows:

> The determination of whether or not a federal court has personal jurisdiction over a nonresident defendant involves a two-step analysis. *Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1457–58 (Fed.Cir.1997); *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir.1995); *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir.), *cert. denied*, 506 U.S. 908, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992); *Wines v. Lake Havasu Boat Mfg., Inc.*, 846 F.2d 40, 42 (8th Cir.1988). First, the court must decide whether the facts satisfy the forum state's long-arm statute. *Northrup King Co., S.A.*, 51 F.3d at 1387; *Wines*, 846 F.2d at 42. If the statute has been satisfied, then the court must address whether the facts show that the nonresident has minimum contacts with the forum state such that the court's exercise of jurisdiction would be

fair and in accordance with the due process clause of the Fourteenth Amendment. *Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.,* 111 F.3d 1386, 1390 (8th Cir.1997); *Moog World Trade Corp. v. Bancomer, S.A.,* 90 F.3d 1382, 1384 (8th Cir.1996); *Genetic Implant Systems, Inc.,* 123 F.3d 1455, 1457–58; *Northrup King Co.,* 51 F.3d at 1387; *Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.,* 950 F.2d 526, 528 (8th Cir.1991); *Wines,* 846 F.2d at 42.

### 1. Long-arm authority

In this case, the long-arm authority for defendant's service was Iowa Rule of Civil Procedure 56.2, which gives Iowa courts jurisdiction to the fullest constitutional extent. *See Larsen v. Scholl,* 296 N.W.2d 785, 788 (Iowa 1980); *Aquadrill, Inc. v. Envtl. Compliance Consulting Services, Inc.,* 558 N.W.2d 391, 392 (Iowa 1997) (citing *Larsen* ). Because the rule has been interpreted to confer jurisdiction to the fullest extent permitted by the due process clause, the personal jurisdiction inquiry here collapses into the single question of whether exercise of personal jurisdiction comports with due process. *See Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 818 (8th Cir.1994).

### 2. Minimum Contacts

Under the due process clause, the constitutional touchstone is whether [the defendant] has established sufficient minimum contacts with Iowa such that the exercise of jurisdiction here does not offend traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Wash-*

*ington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Northwest Airlines, Inc.,* 111 F.3d at 1390. In determining minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). *Wells' Dairy, Inc. v. Estate of J.P. Richardson,* 89 F.Supp.2d 1042, 1047–50 (N.D.Iowa 2000).

The lack of any connections between the defendants challenging personal jurisdiction and the state of Iowa, as demonstrated in their factual averments in support of their motions, and the plaintiffs' concessions, are sufficient to demonstrate the lack of sufficient "minimum contacts" to satisfy due process. *Id.* Thus, no Iowa court has personal jurisdiction over defendants Joseph Ellis, ST & T, Inc., and Michael Scott. Therefore, these defendants' motions to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) will be granted.[4]

### C. The Plaintiffs' Motion To Remand

### 1. Removal and remand

In *Farmers Co-op. Elevator, Woden, Iowa v. Doden,* 946 F.Supp. 718 (N.D.Iowa 1996), this court described the principles of subject matter jurisdiction implicated by removal jurisdiction and the statutory framework for removal and remand of cases originally filed in state court. *See Doden,* 946 F.Supp. at 724–726 (citing, *inter alia,* 28 U.S.C. §§ 1441, 1446, 1447). Therefore, suffice it to say that 28 U.S.C. § 1332 establishes original federal jurisdiction over actions involving "diversity of citizenship"; 28 U.S.C. § 1441(a) provides for removal to federal court of civil actions "of which the district courts of the United States have original jurisdiction";[5]

---

**4.** The court does not, however, reach the contention by defendants ST & T and Scott that they are also entitled to dismissal pursuant to Rules 12(b)(6) and 9(b) for failure to plead fraud with particularity, as this non-jurisdictional challenge is mooted by dismissal of the moving party for lack of personal jurisdiction.

**5.** In their reply brief, the plaintiffs take issue with defendants' assertion of essentially this principle, contending that whether or not the court would have had original jurisdiction over this action is "irrelevant" to jurisdiction on removal, citing *Hurt v. Dow Chem. Co.,* 963 F.2d 1142, 1145 (8th Cir.1992). In response, the defendants assert that they merely

§ 1441(b) provides that actions not founded on a federal question "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought"; § 1446 establishes the procedure for removal; and § 1447 establishes the procedures after removal and the procedures for challenging removal for lack of subject matter jurisdiction or other defect. *Doden*, 946 F.Supp. at 726. "[W]here the district court does not have original jurisdiction for want of subject matter jurisdiction, removal is improper and the case must be remanded under the terms of § 1447(c)." *Id.* Furthermore, "[t]he party seeking removal and opposing remand, . . . has the burden of establishing federal subject matter jurisdiction. The court's removal jurisdiction must be strictly construed." *Id.* (citations omitted).

Similarly, in *McCorkindale v. American Home Assur. Co./A.I.C.*, 909 F.Supp. 646 (N.D.Iowa 1995), this court summarized the principles applicable to a motion to remand as follows:

> (1) the party seeking removal and opposing remand bears the burden of establishing federal subject matter jurisdiction; (2) a fundamental principle of removal jurisdiction is that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed; (3) lack of subject matter jurisdiction requires remand to the state court under the terms of 28 U.S.C. § 1447(c); (4) the court's removal jurisdiction must be strictly construed; therefore, (5) the district court is required to resolve all doubts about federal jurisdiction in favor of remand; and, finally, (6) in general, remand orders issued under 28 U.S.C. § 1447(c) are not reviewable by appeal or writ of mandamus.

*McCorkindale*, 909 F.Supp. at 650; *see also Halsne v. Liberty Mut. Group*, 40 F.Supp.2d 1087, 1089 (N.D.Iowa 1999) (reiterating this summary).

### 2. Removal and diversity

#### a. "Complete diversity" and "fraudulent joinder"

■ Turning to the question of whether the Present Action is removable, the court first takes note of the "complete diversity" requirement: "It is, to say the least, well settled that federal diversity jurisdiction requires complete diversity, so that no de-

paraphrased the language quoted above from § 1441(a) when they made the challenged statement that "because original jurisdiction exists in this court, plaintiffs' motion to remand must be denied." In *Hurt*, the Eighth Circuit Court of Appeals did say that "Title 28 U.S.C. § 1441(b) makes diversity jurisdiction in removal cases narrower than if the case were originally filed in federal court by the plaintiff," *see Hurt*, 963 F.2d at 1145, but the difference identified in *Hurt* was very specific: In *Hurt*, the Eighth Circuit Court of Appeals explained that, under § 1441(b), removal jurisdiction was "narrower" than original jurisdiction, because a "diversity" action cannot be removed, even if the court would have had original jurisdiction over the action, if a defendant is a citizen of the state in which the action is brought. *Id.* ("A defendant may not remove to federal court on the basis of diversity if any of the defendants is a citizen of the state where the action was filed."). In *Hurt*, the action was brought in Missouri by an Illinois plaintiff against a corporation that was a citizen of Delaware and an individual who was a citizen of Missouri. *Id.* The court found that the action was not removable, because the individual defendant was a citizen of Missouri, the state in which the action was brought. *Id.* Thus, in such narrow circumstances, "[t]he fact that [the out-of-state plaintiff] could have invoked the original jurisdiction of the federal court initially is irrelevant [to removal where] [s]he did not," because the defendants were barred from removing the action in any event by the citizenship of one defendant in the state in which the action was brought. *Id.* The decision in *Hurt* and § 1441(b) would only bar removal here if the plaintiffs were *not* citizens of Iowa, but some other state different from the state in which any defendant had citizenship, and one of those defendants was a citizen of Iowa. That is not the situation here. Thus, in this case, it is the "narrowing" of removal jurisdiction on diversity grounds under § 1441(b), not whether the court would have had original jurisdiction over the Present Action, that is "irrelevant."

fendant is a citizen of the same state as any plaintiff." *Walker v. Norwest Corp.*, 108 F.3d 158, 161 (8th Cir.1997) (citing *Strawbridge v. Curtiss,* 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806), and *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373–74, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978)). As this court explained in *Commercial Sav. Bank v. Commercial Fed. Bank,* 939 F.Supp. 674 (N.D.Iowa 1996), a case on which both sides to the Present Action have relied, "Because of the complete diversity requirement, a plaintiff may prevent removal simply by joining to the suit a defendant sharing the same state citizenship." *Commercial Sav. Bank,* 939 F.Supp.at 680 (citations omitted).

■ However, as this court also explained in *Commercial Savings Bank,* there is a caveat to the plaintiff's power to prevent removal by joining a non-diverse party, the doctrine of "fraudulent joinder":

> [T]he filing of a frivolous or otherwise illegitimate claim against a nondiverse defendant solely to prevent removal is a "fraudulent joinder," and courts may disregard the citizenship of fraudulently joined defendants when assessing whether complete diversity exists.

*Commercial Sav. Bank,* 939 F.Supp. at 680. In *Commercial Savings Bank,* this court dealt only with the question of the fraudulent joinder of a non-diverse defendant. *See id.* However, in the Present Action, the defendants contend that both defendant Ron Sanculi and plaintiff Foslip of California have been "fraudulently joined" to defeat diversity jurisdiction and to prevent removal to this court.

■ Nevertheless, this court is not without guidance on the question of the impact of a non-diverse plaintiff on a federal court's diversity jurisdiction, and the further question of whether a non-diverse plaintiff who is "fraudulently joined" can be overlooked in the determination of removability of an action to federal court on diversity grounds. In *Iowa Pub. Serv. Co. v. Medicine Bow Coal Co.,* 556 F.2d 400

(8th Cir.1977), the Eighth Circuit Court of Appeals recognized that, although "the problem presented in this case [involving a non-diverse plaintiff] is somewhat different from that which is presented where a plaintiff undertakes to avoid federal jurisdiction by joining a 'nondiverse' defendant," *Medicine Bow Coal Co.,* 556 F.2d at 404 n. 4, federal jurisdiction can be defeated by the presence of a non-diverse plaintiff, just as it can be defeated by a non-diverse defendant:

> If under our dual court system a potential plaintiff has a choice between a state forum and a federal forum, it is his privilege to exercise that choice subject to legal limitations, and *if he can avoid the federal forum by the device of properly joining a nondiverse defendant or a nondiverse co-plaintiff, he is free to do so.*

*Medicine Bow Coal Co.,* 556 F.2d at 406 (emphasis added).[6] However, the court also recognized in *Medicine Bow Coal Company* that there is a "fraudulent joinder" caveat to the principle that a non-diverse plaintiff defeats federal diversity jurisdiction, because the court stated, "[I]f the 'nondiverse' plaintiff is not a real party in interest, and is purely a formal or nominal party, his or its presence in the case may be ignored in determining jurisdiction." *Id.* at 404.

Therefore, the court turns to the formulation of the proper tests for deciding whether a defendant *or a plaintiff* has been "fraudulently joined."

### b. Test for fraudulent joinder of a defendant

In *Commercial Savings Bank,* this court also explained in more detail the test for determining whether a defendant, such as Ron Sanculi, has been fraudulently joined to defeat diversity jurisdiction:

> Fraudulent joinder exists when the complaint in effect at the time of removal states no claim against the non-di-

6. The court in *Medicine Bow Coal Company* stated that "[r]esults should not be different because of the choice of court," *id.* at 406 n.7, an expectation shared by this court.

verse defendant. Fraudulent joinder exists where a non-diverse party is added solely to deprive the court of jurisdiction. If a defendant has been fraudulently joined, that defendant's presence must be disregarded by the court when determining the existence of diversity jurisdiction. *If there is a reasonable basis for asserting that state law might impose liability on the resident defendant under the facts alleged, then the joinder was not fraudulent and will prevent removal.*

The heavy burden of proving fraudulent joinder rests on the defendant invoking the court's removal jurisdiction, and all doubts should be resolved in favor of remand.

*Commercial Sav. Bank,* 939 F.Supp. at 680 (emphasis added) (citations omitted).

### c. Test for fraudulent joinder of a plaintiff

 Although fraudulent joinder of a defendant is the more common scenario, other courts have applied a virtually identical test to the question of whether or not a *plaintiff* has been "fraudulently joined":

The citizenship of a party-plaintiff may also be disregarded for purposes of determining whether diversity jurisdiction exists if the removing party can show that the nondiverse plaintiff was fraudulently joined. *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981); *Glass Molders, Pottery, Plastics and Allied Workers Int'l v. Wickes Companies, Inc.,* 707 F.Supp. 174, 181 (D.N.J.1989). *To establish that plaintiffs were fraudulently joined, the defendant must demonstrate by clear and convincing evidence that either (1) there has been outright fraud in the plaintiff's recitation of jurisdictional facts or (2) there is no possibility that the plaintiffs would be able to establish a cause of action against the defendant in state court.* Burden v. General Dynamics Corp., 60 F.3d 213, 217 (5th Cir. 1995).... In determining whether the defendant has met his burden of proving fraud, the Court "must evaluate all of

the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." *B., Inc.,* 663 F.2d at 549. Thus, "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)." *Id.* at 549 n.9. *Oliva v. Chrysler Corp.,* 978 F.Supp. 685, 689 (S.D.Tex.1997) (emphasis added); *see also Lerma v. Univision Communications, Inc.,* 52 F.Supp.2d 1011, 1014 (E.D.Wis.1999) (in an action asserting fraudulent joinder of plaintiffs, the court noted that "[j]oinder is fraudulent when there are false allegations of jurisdictional fact, or more commonly and as is alleged here, when the claim against the nondiverse defendant has no possible chance of success in state court.... The removing party must show that, after resolving all issues of fact and law in favor of the plaintiffs, the nondiverse plaintiffs cannot establish a cause of action against the defendant"); *Nelson v. St. Paul Fire & Marine Ins. Co.,* 897 F.Supp. 328, 330 (S.D.Tex.1995) (where the removing defendants asserted that one plaintiff had been fraudulently joined, the court disagreed with the defendants' assertion that joinder should be reviewed in a manner different from the usual case in which a defendant has been improperly joined to defeat jurisdiction, and instead applied "the ordinary standard for analyzing claims of fraudulent joinder," finding it would "apply equally well under the facts of this case," where the plaintiff had not been fraudulently assigned part of the claim; thus, the court considered whether, viewed in the light most favorable to the plaintiff, the plaintiff could state a legitimate cause of action against the defendants). *But see Johnston Indus., Inc. v. Milliken & Co.,* 45 F.Supp.2d 1308, 1312–14 (M.D.Ala.1999) (concluding that "the application of the doctrine of fraudulent joinder of a defendant does not extend to include the alleged fraudulent joinder of a plaintiff"; the court concluded that the proper vehicle to chal-

lenge improper joinder of a plaintiff was a motion to dismiss in state court, and therefore remanded the action to state court for lack of diversity).[7]

As this court noted above, in *Iowa Pub. Serv. Co. v. Medicine Bow Coal Co.*, 556 F.2d 400 (8th Cir.1977), our own Circuit Court of Appeals recognized a test for fraudulent joinder of a non-diverse plaintiff, albeit casting the test in rather different terms from those used by courts cited in the preceding paragraph. In *Medicine Bow Coal Company*, the court began with the principle that lack of complete diversity between all plaintiffs and all defendants ordinarily bars the jurisdiction of the federal courts. *Medicine Bow Coal Co.*, 556 F.2d at 403–04. "However," the court noted, "if the 'nondiverse' plaintiff is not a real party in interest, and is purely a formal or nominal party, his or its presence in the case may be ignored in determining jurisdiction. And such a party may be dropped from the case." *Id.* at 404 (citations omitted). On the other hand, the court concluded, "if the nondiverse plaintiff is a real party in interest, the fact that his joinder was motivated by a desire to defeat federal jurisdiction is not material." *Id.* (citations omitted). The court then explained that "[t]he 'real party in interest' is the person who, under governing substantive law, is entitled to enforce the right asserted, and in a diversity case, the governing substantive law is ordinarily state law." *Id.* The court also explained that "[t]he fact that a plaintiff's claim may lack legal or factual merit does not necessarily mean that he lacks standing to assert the claim as a real party in interest." *Id.* at 405. Rather, the court concluded

that the "real party in interest" requirement was satisfied, in the case then before the court, where all of the plaintiffs were "beneficially interested" in the contract at issue, and all stood to suffer if the defendants were able to take the dispute about price to arbitration and obtain a price increase. *Id.* Finding that the three non-diverse plaintiffs in that case were real parties in interest, and that complete diversity was consequently lacking, the court directed that the case be remanded to state court. *Id.* at 407.

This court finds that the "real party in interest" test articulated in *Medicine Bow Coal Company* is analogous to, but perhaps even more expansive than, the standard as articulated by other courts that a plaintiff is not fraudulently joined unless there is no possibility that the plaintiff would be able to establish a cause of action against the defendant in state court. *See, e.g., Oliva*, 978 F.Supp. at 689. This court will, of course, first apply the test articulated in controlling precedent of this circuit to the question of whether or not Foslip of California has been "fraudulently joined," but in the interest of completeness, will also consider whether the joinder of Foslip of California satisfies the slightly more stringent "no possibility of a cause of action" analysis applied in cases such as *Oliva*, 978 F.Supp. at 689. That is, the court will apply these tests if the court finds that the question of the "fraudulent joinder" of Foslip of California has not been waived, as asserted by the defendants, which is the matter addressed in the next section of this opinion.

---

**7.** This court does not find the decision in *Johnston Indus., Inc. v. Milliken & Co.*, 45 F.Supp.2d 1308, 1312–14 (M.D.Ala.1999), to be persuasive. That decision, although carefully written, fails to give proper consideration to the fact that the fundamental principle of jurisdiction is "complete diversity," not the doctrine of "fraudulent joinder." Therefore, analysis of the language of judicial decisions discussing fraudulent joinder of "defendants," as if those decisions were statutes, to determine whether the language used evinces

an intent to exclude consideration of fraudulent joinder of plaintiffs, *see id.*, misses the point. Rather, in this court's view, the proper questions are whether the principle of "complete diversity" is served by recognizing "fraudulent joinder" of a plaintiff as no bar to a federal court's diversity jurisdiction, and if so, whether the situation of a "fraudulently joined" plaintiff is sufficiently analogous to the situation of a "fraudulently joined" defendant that the same or a similar test should be applied.

#### d. Waiver

■ Although the defendants acknowledge that the plaintiffs have strenuously argued that defendant Ron Sanculi was not fraudulently joined, the defendants contend that the plaintiffs have waived any objection to the defendants' contention that plaintiff Foslip of California was fraudulently joined by failing to contest the issue. They cite *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921), for the proposition that failing to take issue with representations in a removal petition manifests assent for purposes of removal jurisdiction. The defendants read *Wilson* too broadly.

The pertinent part of the *Wilson* decision is the following:

> If in [a diversity] case a resident is joined, the joinder, although fair upon its face, may be shown by a petition for removal to be only a sham or fraudulent device to prevent a removal; *but the showing must consist of a statement of facts rightly leading to that conclusion apart from the pleader's deductions....* If a removal is effected, *the plaintiff may,* by a motion to remand, plea, or answer, *take issue with the statements in the petition.* If he does, the issues so arising must be heard and determined by the District Court, and at the hearing the petitioning defendant must take and carry the burden of proof, he being the actor in the removal proceeding. But *if the plaintiff does not take issue with what is stated in the petition, he must be taken as assenting to its truth, and the petitioning defendant need not produce any proof to sustain it.*

*Wilson,* 257 U.S. at 97–98, 42 S.Ct. 35 (emphasis added). Thus, the matters in the notice of removal to which the plaintiff must object are *factual* matters, that is, "facts rightly leading to th[e] conclusion *apart from the pleader's deductions"* that the party has been fraudulently joined. *Id.* at 97, 42 S.Ct. 35 (emphasis added). This reading of the *Wilson* decision is made clear by the Court in *Wilson* itself:

Here, but for the joinder of the coemploye, the case plainly was one which the employer was entitled to have removed into the District Court on the ground of diverse citizenship; and, if the showing in the petition for removal be taken as true, it is apparent that the coemploye was joined as a defendant without any purpose to prosecute the action in good faith as against him and with the purpose of fraudulently defeating the employer's right of removal. This is the rational conclusion from the facts appropriately stated, *apart from the pleader's deductions.* The petition was properly verified, and the plaintiff, although free to take issue with its statements, did not do so. *He therefore was to be taken as assenting to their truth, relieving the employer from adducing evidence to sustain them, and merely challenging their sufficiency in point of law.*

*Wilson,* 257 U.S. at 98, 42 S.Ct. 35 (emphasis added). Thus, the Court stated in *Wilson* that, even though the plaintiff had failed to challenge the defendant's *factual averments* in support of a contention that a party had been fraudulently joined, "apart from the pleader's deductions," the plaintiff retained the right to "challenge their sufficiency in point of law." *Id.* The Court in *Wilson* concluded that the factual averments were legally sufficient to establish fraudulent joinder of the co-employee, so that the joinder of that non-diverse party was not a legal obstacle to removal to federal court. *Id.* The question before this court is whether the same legal conclusion should be reached here as to Foslip of California on the basis of unchallenged factual averments.

Turning to the notice of removal here, the court notes that the defendants asserted the following as to Foslip of California:

> b. Foslip Pharmaceuticals of California was a California Corporation with its principal place of business in Spencer, Iowa. Plaintiffs have no interest in Foslip Pharmaceuticals of California. Foslip Pharmaceuticals of California has not

consented to be a plaintiff in this action. Foslip Pharmaceuticals is a sham Plaintiff fraudulently joined in this lawsuit. Notice of Removal, ¶ 3(b). The court will first sort the factual averments, which must be taken as undisputed, owing to the plaintiffs' failure to challenge them, from "the pleader's deductions," which this court is free to evaluate. *See Wilson,* 257 U.S. at 97–98, 42 S.Ct. 35.

The first sentence of the quoted paragraph from the Notice of Removal is a factual statement, which must be taken as true in the absence of objection. *See id.* The second sentence is also a factual statement. However, the legal significance of the individual plaintiffs' present lack of any ownership interest in Foslip of California depends upon other facts not in the pleadings, and application of facts to the law, to determine what ownership rights or other interest, if any, the plaintiffs had or retained in Foslip of California after they were allegedly fraudulently induced to part with their interest in the corporation by entering into the settlement agreement, and what, if any, impact that has upon the propriety of joining Foslip of California as a plaintiff. The third sentence makes the unchallenged factual statement that no authorization of the corporation was sought before suit was filed, but again, there is a question of legal significance arising from those facts, which is whether some sort of consent of Foslip of California was required in the circumstances of this case before the individual plaintiffs could include the corporation as a plaintiff in this action. The fourth sentence is clearly one stating a "deduction," or legal conclusion, rather than facts—*i.e.,* it asserts an answer to the ultimate *legal* question now before the court—that Foslip of California is a sham plaintiff fraudulently joined in this lawsuit. *Id.* Thus, while some factual contentions in the Notice of Removal are undisputed, the plaintiffs here remain free to "challeng[e] th[e] sufficiency [of the defendants' factual contentions] in point of law" as establishing that Foslip of California has been fraudulently joined. *Id.* at 98, 42 S.Ct. 35.

■ Moreover, the plaintiffs' failure to contest the defendants' assertion that Foslip of California is fraudulently joined does not preclude remand of this action on the ground that this non-diverse plaintiff is properly joined in this litigation. The failure of a party to seek remand on a particular ground does not preclude the court from taking that action, as the Eighth Circuit Court of Appeals recently explained in *Magee v. Exxon Corp.,* 135 F.3d 599 (8th Cir.1998):

> The credit buyers never moved to remand this case to state court, nor do they question federal jurisdiction on appeal. A plaintiff has only thirty days after a defendant files a notice of removal to move for remand "on the basis of any defect in removal procedure." 28 U.S.C. § 1447(c) (1994); *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 69, 117 S.Ct. 467, 473, 136 L.Ed.2d 437 (1996). *Lack of federal subject-matter jurisdiction, however, cannot be waived, and we may raise the issue ourselves even if the parties do not. See Berger Levee Dist. v. United States,* 128 F.3d 679, 680 (8th Cir.1997); Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action").

*Magee,* 135 F.3d at 601 (emphasis added). Thus, because the question of whether the joinder of Foslip of California destroys diversity jurisdiction in this case implicates the court's subject matter jurisdiction, this court may consider that question even in the absence of assertion of the issue by the plaintiffs in their original motion to remand.[8]

---

8. As mentioned above, the plaintiffs did address the question of whether Foslip of California had been fraudulently joined in their oral arguments in support of their motion to remand.

### 3. The "fraudulently joined" parties here

#### a. Foslip of California

The court will consider first whether plaintiff Foslip of California is a proper party to this litigation, or is a sham party added merely to defeat federal diversity jurisdiction. In addition to the largely conclusory assertions in their Notice of Removal, and their assertion (rejected above) that the plaintiffs have waived remand on this ground, the defendants contend that the individual plaintiffs have no interest in Foslip of California, and no demand has been made on that corporation's board of directors or officers to file this suit. Furthermore, the defendants assert that any claim that the Hansens were fraudulently induced to relinquish any ownership interest in Foslip of California belongs solely to the Hansens, not to the corporation, citing *Llewellyn v. Queen City Dairy, Inc.*, 187 Md. 49, 48 A.2d 322, 328 (1946). The court concludes, however, that the defendants have not carried their burden to prove that Foslip of California is not a "real party in interest" in this litigation, *see Medicine Bow Coal Co.*, 556 F.2d at 404–05, or that there is no possibility that Foslip of California would be able to establish a cause of action against the defendants in state court. *See, e.g., Oliva*, 978 F.Supp. at 689.

■ Taking the defendants' last point first, it may be true, under Iowa law, as well as Maryland law, that a corporation has no interest in shares of its own stock and cannot assert an action alleging shareholders were induced to sell their shares by misrepresentations or non-disclosures. *See Llewellyn*, 48 A.2d at 328; *and compare Ezzone v. Riccardi*, 525 N.W.2d 388, 395 (Iowa 1994) ("The defendants are said to have specifically directed their efforts at [the plaintiffs] in an attempt to separate them from their ownership interests in the corporation. We think a personal right of action is alleged."), *cert. denied sub nom. Ezzone v. Hansen*, 514 U.S. 1108, 115 S.Ct. 1958, 131 L.Ed.2d 850 (1995). However, that proposition would only mean that Fos-

lip of California is not a proper party to *one* part of the fraud claim in the Present Action—the part alleging that the individual plaintiffs were fraudulently induced to part with their shares in the corporate plaintiffs. The Original State Court Action also alleged that the plaintiffs were deprived of trade marks, trade secrets or proprietary information, and business opportunities that properly belonged to the *corporate plaintiffs*. The settlement agreement transferred various trademarks and business interests of the corporate plaintiffs to the defendants, as well as transferring any ownership interest the individual plaintiffs may have had in the corporate plaintiffs. Thus, the fraud claim in the Present action—which alleges fraud in the inducement to settle the Original State Court Action—involves more than an allegation that the Hansens were induced by fraud to give up their interest in the Foslip entities. It also includes allegations of fraud in the inducement to the corporations' transfer of business property to the defendants, a claim on which Foslip of California is undoubtedly a real party in interest. *See Medicine Bow Coal Co.*, 556 F.2d at 404.

■ Furthermore, according to the pleadings, Foslip of California was a party, in its own right, to the settlement agreement that settled the Original State Court Action, and the Present Action alleges breach of that settlement agreement and fraud in the inducement to enter into that settlement agreement. A named party to the settlement agreement is undoubtedly a "real party in interest," as required by *Medicine Bow Coal Company*, to a suit alleging breach of that agreement or fraud in the inducement to enter into that agreement. *See, e.g., Phipps v. Winneshiek County*, 593 N.W.2d 143, 145 (Iowa 1999) ("Iowa has followed the long-standing rule that when a contract is procured by fraud by one party, the defrauded party may elect to rescind the contract or affirm it and pursue an independent claim for damages."); *Randall v. M.M. Moen Co.*, 206

Iowa 1319, 221 N.W. 944, 945 (1928) (an injured party to a contract may sue for its breach); *see also Medicine Bow Coal Co.,* 556 F.2d at 405–06 ("joint venturers" were real parties in interest to, and thus were not fraudulently joined as plaintiffs in, a suit for declaratory judgment concerning terms of the contract, even though they were not parties to the contract, because they had a beneficial interest in the contract). Indeed, " '[a]s a general rule, wrongs which affect the corporation itself, or the stockholders generally, give rise to causes of action on the part of the corporation, and not primarily on the part of an individual shareholder.' " *Ezzone,* 525 N.W.2d at 394 (quoting 19 Am.Jur.2d *Corporations* § 2246, at 148 (1986)). Thus, Foslip of California is a real party in interest on claims that the corporation was induced by fraud to enter into the settlement agreement or that the defendants breached the settlement agreement to which Foslip of California was a party.

▮ The defendants' assertion that the individual plaintiffs have never made a demand upon Foslip of California, its directors, or officers, to bring suit does not change this conclusion, as there may be circumstances in which such a demand is not required. *See, e.g., Ezzone v. Riccardi,* 525 N.W.2d 388, 394 n. 2 (Iowa 1994). In *Ezzone,* the Iowa Supreme Court noted that suits on behalf of an Iowa corporation are governed by IOWA CODE § 490.740, which establishes certain procedures that must be followed before a shareholder is allowed to bring suit for a wrong done to the corporation, including a requirement that the shareholder first demand that the corporation take action. *Id.* The Iowa Supreme Court pointed out that it had "held that, when such demands are futile, the shareholder need not make them." *Id.* (citing *Holi–Rest, Inc. v. Treloar,* 217 N.W.2d 517, 523 (Iowa 1974)). The court in *Ezzone* found that such a demand might well have been unnecessary where "the demand would be made by the shareholders to themselves, as they were also the officers of the corporation." *Id.* In the Present Action, it seems equally likely that

a demand would be either futile or unnecessary, where the persons currently in control of the corporation are precisely the persons the plaintiffs allege defrauded the corporation in the settlement of the Original State Court Action.

▮ Furthermore, the court is not persuaded by the argument of the defendants that, because the individual plaintiffs have no current ownership interest in Foslip of California, they are not entitled to bring suit on behalf of that corporation. The defendants rely on the very settlement agreement that is challenged here as having been obtained by fraud as demonstrating that the individual plaintiffs have no current interest in Foslip of California. That argument thus presents something of a paradox: The individual plaintiffs purportedly cannot act on behalf of Foslip of California to assert that corporate plaintiff's fraud claims, because the individual plaintiffs lack a present interest in the corporation, but the plaintiffs allege that the very reason they do not presently have any interest in the corporation is that they were induced by fraud to part with their interest in Foslip of California in the same transaction in which Foslip of California was itself also defrauded. Iowa law, however, provides a way out of this paradox. IOWA CODE § 490.740 provides, in pertinent part, that "[a] person shall not commence a proceeding in the right of a domestic or foreign corporation unless that person was a shareholder of the corporation *when the transaction complained of occurred.*" *See also* FED. R. CIV. P. 23.1 (in an action by a shareholder to enforce a right of the corporation, the shareholder must allege, *inter alia,* that he or she was a shareholder "at the time of the transaction of which the plaintiffs complains"). Thus, it is not the Hansens' *present* interest in Foslip of California that is of importance, but whether they had an interest in Foslip of California at the time of the alleged wrongs against the corporation, that determines whether they can bring the claims of the corporation in the corporation's name. The com-

plaint in the Present Action does allege that the Hansens had such an ownership interest in Foslip of California at the time of the Original State Court Action and the transaction giving rise to the present claims, the settlement of that action. Thus, they can properly bring a claim in the name of Foslip of California, and that corporation is properly joined as a plaintiff.

■ Finally, as the Eighth Circuit Court of Appeals explained in *Medicine Bow Coal Company,* "[t]he fact that a plaintiff's claim may lack legal or factual merit does not necessarily mean that he lacks standing to assert the claim as a real party in interest." *Medicine Bow Coal Co.,* 556 F.2d at 405. Thus, this court need not determine at this time whether the failure of the Hansens to obtain authority from Foslip of California before commencing a suit in that corporation's name, or the Hansens' lack of a present ownership interest bars litigation of Foslip of California's claims of fraud in the inducement to enter the settlement agreement or breach of that settlement agreement, because Foslip of California is clearly a "real party in interest" on either claim involving a settlement agreement to which it was a party in its own right. *Id.* All doubts about federal jurisdiction should be resolved in favor of remand. *Halsne,* 40 F.Supp.2d at 1089; *Commercial Sav. Bank,* 939 F.Supp. at 680; *McCorkindale,* 909 F.Supp. at 650.

The court cannot find that Foslip of California has been fraudulently joined, even under the slightly more stringent "no possibility of a cause of action" analysis applied in cases such as *Oliva,* 978 F.Supp. at 689, which draw that test for fraudulent joinder of a plaintiff from the test ordinarily applied to fraudulent joinder of a defendant. For essentially the same reasons, under the facts as alleged, there is a distinct possibility—rather than no possibility—that Foslip of California would be able to establish a cause of action against the defendants in state court. *See, e.g., id.*

Therefore, the court concludes that Foslip of California is a proper party to the present action and was not "fraudulently joined" to defeat federal jurisdiction. Consequently, there is a lack of complete diversity between all plaintiffs and all defendants in this case, and the Present Action must be remanded to state court pursuant to 28 U.S.C. § 1447(c), because this court lacks subject matter jurisdiction. *See Halsne,* 40 F.Supp.2d at 1089; *Doden,* 946 F.Supp. at 726; *McCorkindale,* 909 F.Supp. at 650.

### b. Ron Sanculi

The court finds that it need not address the various issues so strongly asserted by the parties concerning whether or not Mr. Sanculi has been fraudulently joined as a defendant. The court has concluded that complete diversity is lacking, and this case must therefore be remanded, based upon the proper joinder of plaintiff Foslip of California. Whether or not defendant Ron Sanculi has been fraudulently joined will not change that result.

### III. CONCLUSION

Although the court might ordinarily have considered the question of its subject matter jurisdiction over this removed action before considering the question of its personal jurisdiction over defendants Joseph Ellis, ST & T, and Michael Scott, under *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 587–88, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999), the circumstances presented here suggested that the court could properly address the personal jurisdiction challenge first. In light of the plaintiffs' concession that they have no good faith resistance to these defendants' assertion that no Iowa court has personal jurisdiction over them, the motions to dismiss by defendants Joseph Ellis, ST & T, and Michael Scott will be granted.

As to the more heated debate concerning whether this action has been properly removed, the court finds that the plaintiffs have not succeeded by fraud in defeating the diversity jurisdiction of this court. Plaintiff Foslip of California has not been

fraudulently joined in this litigation, because it is a real party in interest to the claims asserted in its name. Because Foslip of California is a citizen of California, as are all but one of the defendants, complete diversity between all plaintiffs and all defendants is lacking in this action. The lack of diversity deprives this court of subject matter jurisdiction over the removed petition, and consequently this action must be remanded to state court pursuant to 28 U.S.C. § 1447(c). Any unresolved motions must likewise be remanded to the attention of the state court.

THEREFORE,

1. The January 13, 2000, motions to dismiss by defendants Joseph M. Ellis, ST & T, Inc., and Michael J. Scott are **granted** to the extent that these defendants are **dismissed** pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure **for lack of personal jurisdiction** over them by any Iowa court.

2. The plaintiffs' January 7, 2000, motion to remand is **granted**, and this matter, including all unresolved motions, is **remanded** to the Iowa District Court for Clay County.

**IT IS SO ORDERED.**