WELLS' DAIRY, INC., Plaintiff,

v.

AMERICAN INDUSTRIAL REFRIGERATION, INC., Refrigeration Valves and Systems Corporation, O.H. Livermore Construction, Inc., and O.H. Livermore Construction, Defendants.

No. C 01–4052–MWB.

United States District Court, N.D. Iowa, Western Division.

Aug. 10, 2001.

the injunction is dissolved, it strongly suggests that the threat was never there in the first place.

Gregg Williams of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., Sioux, IA, Richard Strawbridge of Clausen Miller, P.C., Chicago, IL, for Plaintiff Wells' Dairy.

Thomas Harrington of Cozen and O'Connor, Philadelphia, PA, John Mayne of Mayne, Marks, Madsen & Hirschbach, L.L.P., Sioux City, IA, for Defendant RVS.

Matthew Early of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, L.L.P., Sioux City, IA, Bradley Lindeman of Meagher & Geer, L.L.P., Minneapolis, MN, for Defendant AIR.

Defendant Livermore did not appear at the oral arguments.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT RVS'S MOTION TO TAKE LIMITED DISCOVERY; PLAINTIFF WELLS' DAIRY'S MOTION TO REMAND; AND PLAINTIFF WELLS' DAIRY'S MOTION TO STRIKE AFFIDAVIT**

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. BACKGROUND .................................................... 1022

II. LEGAL ANALYSIS ............................................... 1025
 A. General Principles Of Diversity Jurisdiction And Fraudulent Joinder .... 1025
 B. Discovery On "Fraudulent Joinder" Issues ........................... 1026
 1. Contentions of the parties ........................................ 1026
 2. Face of the pleadings ............................................ 1028
 3. "Piercing the pleadings" ......................................... 1031
 4. Predetermination discovery ...................................... 1033
 a. Guidance from precedent ...................................... 1033
 b. Guidance from applicable standards ........................... 1034
 i. Comparison of "fraudulent joinder" and Rule 12(b)(6) standards ................................................. 1034
 ii. The "species" of fraudulent joinder ........................ 1036
 C. Wells' Dairy's Motion To Remand .................................. 1041
 D. Attorneys' Fees And Costs ......................................... 1041

III. CONCLUSION ................................................... 1043

This lawsuit, which was originally filed in the Iowa District Court for Plymouth County, arises from a catastrophic liquid ammonia explosion at plaintiff Wells' Dairy's South Ice Cream Plant in Le Mars, Iowa, on March 27, 1999. Defendant Refrigeration Valves and Systems Corporation (RVS) removed this action to this federal court on May 30, 2001, with the consent of defendant American Industrial Refrigeration, Inc. (AIR), alleging that defendant O.H. Livermore Construction, Inc. (Livermore), had been fraudulently joined solely to defeat federal diversity jurisdiction. This matter is now before the court pursuant to RVS's June 4, 2001, motion to take limited discovery on the issue of the fraudulent joinder of Livermore; Wells' Dairy's June 15, 2001, motion to remand this action to state court, without discovery, because the face of the complaint establishes that Livermore has not been fraudulently joined; and Wells' Dairy's August 2, 2001, motion to strike the affidavit of RVS's counsel offered in support of RVS's contention that Livermore has been fraudulently joined in this action.

## I. BACKGROUND

■ Wells' Dairy's original petition[1] in this action, filed in the Iowa District Court

for Plymouth County on March 25, 2001, alleges that, on March 27, 1999, a liquid ammonia refrigeration system at Wells' Dairy's South Ice Cream Plant (the Plant) in Le Mars, Iowa, catastrophically failed causing a massive liquid ammonia leak. Wells' Dairy alleges further that the vapors of the liquid ammonia ignited and an explosion occurred, causing millions of dollars in damage to Wells' Dairy's property and business. Wells' Dairy seeks to hold the defendants liable for that damage on various theories.

More specifically, Wells' Dairy alleges that AIR is a California corporation with its principal place of business in Watsonville, California, that AIR entered into a written contract with Wells' Dairy in October 1991 under which AIR agreed to design and build the Plant, and that AIR thereafter contracted to upgrade and add to the Plant. Wells' Dairy alleges that AIR was responsible for designing, installing, and inspecting the liquid ammonia circulation system, a ventilation system, and an ammonia detection system for the Plant. In Counts I, II, and III of its original state-court petition, Wells' Dairy asserts claims of breach of contract, negligence, and strict liability in tort, respectively, against AIR for damages arising

---

1. On July 9, 2001, Wells' Dairy was granted leave to file its First Amended Petition in this action by a magistrate judge of this court. The First Amended Petition added claims against O.H. Livermore Construction, alleged to be a sole proprietorship, on the ground that O.H. Livermore Construction, Inc., was not incorporated until 1993, after the conduct giving rise to the claims in this lawsuit. The claims against the Livermore sole proprietorship, for the most part, are nearly identical to the claims asserted against the Livermore corporate entity in Wells' Dairy's original state-court petition. It does not appear that the addition of the Livermore sole proprietorship as a defendant in this action changes either RVS's grounds for asserting fraudulent join-

der or Wells' Dairy's grounds for seeking remand. Moreover, the propriety of removal must be determined on the basis of the plaintiff's petition as it existed at the time of removal. *Foslip Pharmaceuticals, Inc. v. Metabolife Intl., Inc.,* 92 F.Supp.2d 891, 901 (N.D.Iowa 2000) (" 'a fundamental principle of removal jurisdiction is that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed' ") (quoting *McCorkindale v. American Home Assur. Co./A.I.C.,* 909 F.Supp. 646, 650 (N.D.Iowa 1995)). Therefore, the remainder of the discussion here focuses, as did the parties, on Wells' Dairy's petition as it stood at the time of removal.

from the March 27, 1999, explosion caused by the failure of the systems designed, installed, and inspected by AIR. Next, Wells' Dairy alleges that RVS is a Texas corporation with its principal place of business in Bryan, Texas, and that RVS participated in the design of the liquid ammonia circulation system at the Plant. In Counts IV and V of its original state-court petition, Wells' Dairy alleges claims of negligence and strict liability in tort against RVS arising from the explosion caused by the failure of the ammonia system RVS helped to design. Finally, Wells' Dairy alleges that Livermore is an Iowa Corporation with its principal place of business in Le Mars, Iowa, and that Livermore acted as general contractor for the construction of the Plant. In Counts VI and VII of its original state-court petition, Wells' Dairy asserts claims of breach of contract and negligence against Livermore, alleging that Livermore's breach of its contractual and common-law duties was a cause of the March 27, 1999, explosion.

Defendants Livermore and AIR answered Well's Dairy's original state-court petition and asserted affirmative defenses, Livermore on April 16, 2001, and AIR on May 2, 2001. However, on May 30, 2001, with the consent of AIR, RVS removed this action to this federal court, alleging that defendant Livermore had been fraudulently joined solely to defeat federal diversity jurisdiction. Accordingly, RVS alleged that this action is removable pursuant to 28 U.S.C. § 1441 *et seq.*, as this is an action over which this court would have original jurisdiction pursuant to 28 U.S.C. § 1332(a) where the citizenship of defendant Livermore is properly disregarded.

On June 4, 2001, shortly after removing this action, RVS filed a motion in this court for leave to take limited discovery on the issue of the fraudulent joinder of Livermore. The essence of RVS's contention that Livermore has been fraudulently joined is that "Livermore had no involvement in the design of the Plant or any of its Systems, including the ventilation system, and its role in construction of the Plant did not include any responsibilities for the construction of the ventilation system, the liquid ammonia circulation system, or the ammonia detection system *which are the only systems alleged by Wells in its Petition to have contributed to cause the explosion.*" Defendant RVS's Memorandum Of Law In Support Of The Motion For Leave To Take Limited Discovery On The Issue Of The Fraudulent Joinder Of O.H. Livermore Construction, Inc. (RVS's Brief In Support Of Limited Discovery) at 2–3 (emphasis added). RVS argues that it should be permitted to take limited discovery to allow it to support these contentions, which would demonstrate that Wells' Dairy's claims against Livermore are frivolous, thereby establishing that Livermore has been fraudulently joined in this action solely to defeat federal diversity jurisdiction.

However, on June 15, 2001, Wells' Dairy filed its own motion to remand this action to state court and combined with that motion a resistance to RVS's motion to take limited discovery. Wells' Dairy contends that discovery is not required, because the impropriety of removal and the propriety of remand should be judged on the face of the pleadings. Wells' Dairy contends that RVS has failed to plead fraudulent joinder with the particularity required for pleading this or any other kind of fraud, and certainly RVS's disputes with the allegations in Wells' Dairy's petition do not amount to "clear and convincing evidence" of fraudulent joinder. On the other hand, Wells' Dairy contends that its claims against Livermore satisfy the applicable Iowa pleading requirements, are sufficient to defeat a Rule 12(b)(6) motion to dismiss for failure to state a claim—which Wells' Dairy points

out Livermore has *not* made in this case—and thus are more than sufficient to demonstrate the "slight possibility of a right to relief" necessary to establish *proper* joinder of Livermore. Consequently, Wells' Dairy argues that removal was improper and this case should be remanded to the Iowa District Court for Plymouth County, without the unnecessary delay of even limited discovery.[2]

On July 17, 2001, RVS's counsel submitted his affidavit in support of RVS's resistance to Wells' Dairy's motion to remand, in which counsel avers that he has been informed by Livermore's counsel that Livermore was responsible only for building the "shell" of the Plant pursuant to plans provided by Wells' Dairy, that Livermore had no responsibility for design or construction of any of the ammonia systems, the failure of which allegedly caused the explosion, and that officers of Wells' Dairy had assured officers of Livermore prior to the filing of this litigation that Wells' Dairy did not believe that Livermore had done anything wrong, but that Wells' Dairy's insurers were "calling the shots" in the impending litigation. Counsel averred that he had not yet been able to procure affidavits from those officers of Livermore involved in the alleged conversations with Wells' Dairy's officers. On August 2, 2001, Wells' Dairy moved to strike RVS's counsel's affidavit, on the ground that it was not based on personal knowledge of the affiant, at best consisted of hearsay, and was therefore inadmissible. RVS did not resist the motion to strike the affidavit from its counsel, but on August 3, 2001, RVS submitted the affidavits of Bob Livermore and O.H. Livermore concerning conversations they had with officers of Wells' Dairy about impending litigation.

The court heard oral arguments on the pending motions on August 6, 2001. Plaintiff Wells' Dairy was represented at the oral arguments by Gregg Williams of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., in Sioux City, Iowa, and Richard Strawbridge of Clausen Miller, P.C., in Chicago, Illinois. Defendant RVS was represented by Thomas Harrington of Cozen and O'Connor in Philadelphia, Pennsylvania, and John Mayne of Mayne, Marks, Madsen & Hirschbach, L.L.P., in Sioux City, Iowa. Defendant AIR was represented by Matthew Early of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, L.L.P., in Sioux City, Iowa, and by Bradley Lindeman of Meagher & Geer, L.L.P., in Minneapolis, Minnesota, who appeared by telephone. Defendant Livermore did not appear at the oral arguments. At the oral arguments, Wells' Dairy orally moved to strike the affidavits of Bob and O.H. Livermore to the extent they consisted of hearsay. In addition, during the oral arguments, Wells' Dairy offered, and the court admitted, as Wells' Dairy's Hearing Exhibit 1, the affidavit of David Wells concerning employment of Livermore as general contractor for construction of the Plant.

**2.** In its motion to remand and combined resistance to RVS's motion for limited discovery, Wells' Dairy also raises the issue of its "potential" resistance to the appearance of the law firm of Cozen and O'Connor to represent RVS, because of a "possible" conflict of interest arising from prior representation of Wells' Dairy by that law firm. The parties have devoted considerable attention to this *potential* issue in their briefing of the motion to remand and motion for limited discovery. However, the court will not be drawn into that controversy at this time, first, because no motion to disqualify Cozen and O'Connor is presently before the court and, second, because the issue has no bearing whatsoever on the disposition of the motion to remand or the motion for limited discovery.

## II. LEGAL ANALYSIS

### A. General Principles Of Diversity Jurisdiction And Fraudulent Joinder

As the parties recognize, in *Foslip Pharmaceuticals, Inc. v. Metabolife Int'l, Inc.*, 92 F.Supp.2d 891 (N.D.Iowa 2000), this court summarized the principles of subject matter jurisdiction implicated by removal and remand of cases originally filed in state court, including the doctrine of "fraudulent joinder." Therefore, the court will begin with a review of the standards articulated in *Foslip*.

In *Foslip*, this court summarized the statutory requirements for removal and remand, as follows:

> [S]uffice it to say that 28 U.S.C. § 1332 establishes original federal jurisdiction over actions involving "diversity of citizenship"; 28 U.S.C. § 1441(a) provides for removal to federal court of civil actions "of which the district courts of the United States have original jurisdiction"; § 1441(b) provides that actions not founded on a federal question "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought"; § 1446 establishes the procedure for removal; and § 1447 establishes the procedures after removal and the procedures for challenging removal for lack of subject matter jurisdiction or other defect. *Farmers Co-op. Elevator, Woden, Iowa v. Doden*, 946 F.Supp. 718, 726 (N.D.Iowa 1996). "[W]here the district court does not have original jurisdiction for want of subject matter jurisdiction, removal is improper and the case must be remanded under the terms of § 1447(c)." *Id.* Furthermore, "[t]he party seeking removal and opposing remand, ... has the burden of establishing federal subject matter jurisdiction. The court's removal jurisdiction must be strictly construed." *Id.* (citations omitted).

Similarly, in *McCorkindale v. American Home Assur. Co./A.I.C.*, 909 F.Supp. 646 (N.D.Iowa 1995), this court summarized the principles applicable to a motion to remand as follows:

> (1) the party seeking removal and opposing remand bears the burden of establishing federal subject matter jurisdiction; (2) a fundamental principle of removal jurisdiction is that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed; (3) lack of subject matter jurisdiction requires remand to the state court under the terms of 28 U.S.C. § 1447(c); (4) the court's removal jurisdiction must be strictly construed; therefore, (5) the district court is required to resolve all doubts about federal jurisdiction in favor of remand; and, finally, (6) in general, remand orders issued under 28 U.S.C. § 1447(c) are not reviewable by appeal or writ of mandamus.

*McCorkindale*, 909 F.Supp. at 650; *see also Halsne v. Liberty Mut. Group*, 40 F.Supp.2d 1087, 1089 (N.D.Iowa 1999) (reiterating this summary).

*Foslip*, 92 F.Supp.2d at 900–01.

In *Foslip*, this court also explained the principle of "complete diversity" for federal subject matter jurisdiction and the effect of "fraudulent joinder" on the "complete diversity" requirement in the context of removal and remand:

> "It is, to say the least, well settled that federal diversity jurisdiction requires complete diversity, so that no defendant is a citizen of the same state as any plaintiff." *Walker v. Norwest Corp.*, 108 F.3d 158, 161 (8th Cir.1997) (citing *Strawbridge v. Curtiss*, 7 U.S. 267, 3

Cranch 267, 2 L.Ed. 435 (1806), and *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373–74, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978)). As this court explained in *Commercial Sav. Bank v. Commercial Fed. Bank*, 939 F.Supp. 674 (N.D.Iowa 1996), ... "Because of the complete diversity requirement, a plaintiff may prevent removal simply by joining to the suit a defendant sharing the same state citizenship." *Commercial Sav. Bank*, 939 F.Supp. at 680 (citations omitted).

However, as this court also explained in *Commercial Savings Bank*, there is a caveat to the plaintiffs power to prevent removal by joining a non-diverse party, the doctrine of "fraudulent joinder":

> [T]he filing of a frivolous or otherwise illegitimate claim against a nondiverse defendant solely to prevent removal is a "fraudulent joinder," and courts may disregard the citizenship of fraudulently joined defendants when assessing whether complete diversity exists. *Commercial Sav. Bank*, 939 F.Supp. at 680.

*Foslip*, 92 F.Supp.2d at 901–02.

█ In *Foslip*, this court also articulated the test for determining whether a defendant has been "fraudulently joined" to defeat diversity jurisdiction:

> In *Commercial Savings Bank*, this court also explained[:]
>
> Fraudulent joinder exists when the complaint in effect at the time of removal states no claim against the non-diverse defendant. Fraudulent joinder exists where a non-diverse party is added solely to deprive the court of jurisdiction. If a defendant has been fraudulently joined, that defendant's presence must be disregarded by the court when determining the existence of diversity jurisdiction. *If there is a reasonable basis for asserting that state law might impose liability on*

*the resident defendant under the facts alleged, then the joinder was not fraudulent and will prevent removal.*

> The heavy burden of proving fraudulent joinder rests on the defendant invoking the court's removal jurisdiction, and all doubts should be resolved in favor of remand.

*Commercial Sav. Bank*, 939 F.Supp. at 680 (emphasis added) (citations omitted).

*Foslip*, 92 F.Supp.2d at 902–03. The parties do not disagree with these standards, although they do disagree with each other on whether or not these standards require remand in this case, and whether or not discovery should be permitted on the question of Livermore's fraudulent joinder before the court rules on the motion to remand. To resolve these disagreements, the court turns to the specific contentions of the parties and supplementation of the principles articulated in *Foslip*, as necessary, in light of those contentions.

█ While the court is sympathetic to the desire of the removing defendants not to pursue this litigation in Plymouth County, where the plaintiff is undoubtedly the largest employer, and their preference for litigating what will doubtless be a complicated and contentious lawsuit in this federal court instead, this court must also keep in mind that it is a court of limited jurisdiction. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). The court does not find that the favorableness or unfavorableness of the state forum to one party or another is a factor in the analysis of fraudulent joinder issues, or removal and remand issues generally, under *Foslip* or any of the other precedents explored herein.

### B. Discovery On "Fraudulent Joinder" Issues

#### 1. Contentions of the parties

In its motion to take limited discovery on the jurisdictional issue of whether or

not Livermore has been fraudulently joined in this action, RVS stated, "Upon information and belief, RVS believes, and therefor [sic] avers, that Wells will not be able to prove a cause of action against Livermore under the Petition based upon Iowa law." Defendant RVS's Motion For Leave To Take Limited Discovery On The Issue Of The Fraudulent Joinder Of O.H. Livermore Construction, Inc. (RVS's Motion For Limited Discovery) at ¶ 4. RVS asserted further,

> 5. Limited discovery is needed to establish the absence of such cause of action and the resulting conclusion that Livermore was fraudulently joined in this matter by Wells solely for the purpose of defeating diversity jurisdiction.
>
> Such limited discovery would include and relate to the allegations made by Wells against Livermore in the Petition, and the lack of basis therefor, including, without limitation, any alleged role or involvement of Livermore in the design and/or construction of the improvements in question.

*Id.* at ¶¶ 5–6.

In its supporting brief, RVS notes that Wells' Dairy "alleges that Livermore breached its contract by failing to '. . . build the structure of the Plant to properly ventilate [it] in the event of an ammonia leak . . .' and by failing to 'supervise the construction . . . to make sure the Plant was properly ventilated in the event of an ammonia leak.'" RVS's Brief In Support Of Limited Discovery at 2 (quoting Wells' Dairy's Petition at ¶ 44). RVS notes that similar allegations are made in support of Wells' Dairy's negligence claim against Livermore. *Id.* (quoting the Petition at ¶ 50). However, RVS points out that it is "interesting" that Wells' Dairy also alleges that defendant AIR was responsible for the design, assembly, manufacture, sale, and inspection of the Plant's ventilation system. Therefore, RVS argues that,

upon information and belief, "Livermore had no involvement in the design of the Plant or any of its Systems, including the ventilation system, and its role in construction of the Plant did not include any responsibilities for the construction of the ventilation system, the liquid ammonia circulation system, or the ammonia detection system *which are the only systems alleged by Wells in its Petition to have contributed to cause the explosion."* *Id.* at 2–3 (emphasis added). RVS also argues that Livermore built the physical structure of the Plant on the basis of, and in strict adherence to, plans supplied by Wells' Dairy itself. Thus, RVS argues that no acts, omissions, or other conduct of Livermore caused or could have caused or contributed to the cause of the explosion at issue or any of the damages Wells' Dairy alleges that it sustained as a result of the explosion. Hence, RVS argues that there is simply no possibility that Wells' Dairy can prove any cause of action against Livermore, leading logically to the conclusion that Livermore has been fraudulently joined in this action solely to defeat federal diversity jurisdiction and to make the action "non-removable."

The gravamen of RVS's motion for limited discovery appears to be the following argument in its supporting brief:

> RVS has alleged in its Notice of Removal that complete diversity of citizenship exists in this case due to the fraudulent joinder of Livermore. As is the nature of fraudulent conduct, the factual bases for these allegations have been concealed by Wells, and RVS is requesting leave to take limited discovery regarding only this issue in order to develop the facts necessary to support its fraudulent joinder allegations with affidavits, depositions, documentation or other evidence and to appropriately establish for the record and for this Hon-

orable Court that Livermore has been fraudulent[ly] joined. RVS's Brief In Support Of Limited Discovery at 4. RVS argues further that it is well-settled that a party asserting fraudulent joinder is entitled to present facts to support its contention and that various courts have allowed limited discovery prior to disposing of motions to remand where the removing party has asserted removal was appropriate on the basis of fraudulent joinder of a party to destroy diversity jurisdiction.

On the issue of discovery, in its June 15, 2001, Motion To Remand And Combined Resistance To Defendant's Motion To Take Limited Discovery, Wells' Dairy argues that this court and the Eighth Circuit Court of Appeals have adopted the position that evidentiary hearings are improper in the context of removal proceedings. Instead, Wells' Dairy argues that the impropriety of removal should be determined on the basis of the pleadings alone. Therefore, Wells' Dairy asks the court simply to deny RVS's motion for leave to take limited discovery in the course of ruling on Wells' Dairy's motion to remand. However, if the court finds that there is some basis for limited discovery, Wells' Dairy requests that the court grant the parties additional time to brief the issue.

On July 2, 2001, RVS filed a "Response" to Wells' Dairy's motion to remand and combined resistance to RVS's motion for limited discovery, and a supporting memorandum, which the court construes in pertinent part as RVS's reply in support of its motion for limited discovery. In that reply, RVS contends that a rule against evidentiary hearings on motions to remand is not the same as a rule against limited discovery on the issue of fraudulent joinder or a rule against submission of supporting affidavits, depositions, discovery responses, or other exhibits in support of the removing party's contention that a party has been fraudulently joined to destroy diversity jurisdiction. RVS argues that supporting affidavits and discovery responses are commonly and properly considered in disposition of motions to remand, where removal is based on allegations of fraudulent joinder. RVS reiterates its contention that all of the facts necessary to establish its claim of fraudulent joinder are within the knowledge of Wells' Dairy and Livermore. RVS contends that discovery will demonstrate that Livermore was not responsible for the design of the Plant, or the design, assembly, or installation of the ammonia circulation or ventilation systems. Thus, RVS contends that Wells' Dairy will be unable to show that any conduct, error, or omission by Livermore caused the explosion or damage to Wells' Dairy. Consequently, RVS contends that there is no possibility that Wells' Dairy can prevail on any claim against Livermore, leading to the further conclusion that Livermore has been fraudulently joined in this action solely to attempt to defeat federal diversity jurisdiction.

### 2. *Face of the pleadings*

As Wells' Dairy contends, in *Anderson v. Home Insurance Company,* 724 F.2d 82 (8th Cir.1983), the Eighth Circuit Court of Appeals stated that "[f]raudulent joinder exists if, *on the face of the pleadings,* no cause of action lies against the resident defendant." *Anderson,* 724 F.2d at 84 (emphasis added). In *Anderson,* the court affirmed the district court's determination that, "[o]n the face of the pleadings, Anderson stated no claim against [the resident defendant]." *Id.* (emphasis added). Here, Wells' Dairy contends that, on the face of its pleadings, it has stated claims against Livermore, the resident defendant, and the court need look no further. The court deems it appropriate, therefore, to examine, first, what appears on the face of

Wells' Dairy's pleadings of claims against Livermore.

In Count VI of its state court petition, Wells' Dairy alleges that, as general contractor for construction of the Plant, Livermore had a contractual obligation to design and build the Plant in a good and workmanlike manner, including following all applicable industry codes, standards, and good construction practices. Petition at ¶ 43. Wells' Dairy alleges that, although it performed all of its duties and obligations under the contract between the parties, Livermore breached the contract. *Id.* at ¶¶ 44–45. Specifically, Wells Dairy alleges that Livermore breached the terms of the contract in the following ways:

 a. Failing to build the structure of the Plant to properly ventilate the Plant in the event of an ammonia leak in the Plant;

 b. Failing to supervise the construction of the Plant to make sure the Plant was properly ventilated in the event of an ammonia leak in the Plant;

 c. Failing to properly design and construct the Plant so that it met industry codes, standards, and good practices; and

 d. Otherwise failing to perform its duties and obligations pursuant to the aforementioned contract.

Petition at ¶ 44. Wells' Dairy alleges that, as a direct and proximate result of one or more of Livermore's breaches of the contract, on or about March 27, 1999, the liquid ammonia circulation system catastrophically failed at the Plant, flooding the engine room with liquid ammonia, and resulting in an explosion that caused damage to Wells' Dairy's business and property. *Id.* at ¶ 46. As relief on this claim, Wells' Dairy seeks damages to compensate it for its loss, interest as provided by law, costs, fees, and any other relief the court deems appropriate. *Id.*, prayer to Count VI.

Under Iowa law, "[i]n a breach-of-contract claim, the complaining party must prove: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach." *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998) (citing *Iowa–Illinois Gas & Elec. Co. v. Black & Veatch*, 497 N.W.2d 821, 825 (Iowa 1993)). "A party breaches a contract when, without legal excuse, it fails to perform any promise which forms a whole or a part of the contract." *Id.* (citing *Magnusson Agency v. Public Entity Nat'l Co.*, 560 N.W.2d 20, 27 (Iowa 1997)). It is readily apparent that Wells' Dairy has pleaded each and every element of a breach-of-contract claim against Livermore. *Compare Anderson*, 724 F.2d at 84 (in an action for libel and wrongful denial of an insurance claim, the complaint failed to state a claim against the resident defendant, the insurance agent, where the agent was not a party to the insurance contract and was not alleged to be involved in the libel claim). Therefore, it cannot be said that, on the face of the complaint, there is such a flaw in the pleading of this claim that there is no " 'reasonable basis for asserting that state law might impose liability on the resident defendant under the facts alleged.' " *Foslip*, 92 F.Supp.2d at 903 (standard for fraudulent joinder) (quoting *Commercial Sav. Bank*, 939 F.Supp. at 680). Moreover, while RVS asserts that some of the facts alleged are not true, RVS has done no more than generate a factual dispute on the elements of Wells' Dairy's breach-of-contract claim. Such a factual dispute does not satisfy RVS's " 'heavy burden of proving fraudulent joinder,' " especially where " 'all doubts should be re-

solved in favor of remand.'" *Id.* (again quoting *Commercial Sav. Bank,* 939 F.Supp. at 680).

 In Count VII, Wells' Dairy's negligence claim against Livermore, Wells' Dairy alleges that, as general contractor for the construction of the Plant, Livermore "had a duty to exercise reasonable care and due caution in designing and constructing the Plant so as not to cause damage to the property and business" of Wells' Dairy. *Id.* at ¶¶ 48–49. However, Wells' Dairy alleges that Livermore breached these duties by committing one or more of the following negligent acts or omissions:

a. Negligently and carelessly fail[ing] to build the structure of the Plant to properly ventilate the Plant in the event of an ammonia leak in the Plant;

b. Negligently and carelessly fail[ing] to supervise the construction of the Plant to make sure the Plant was properly ventilated in the event of an ammonia leak in the Plant;

c. Negligently and carelessly fail[ing] to properly design and construct the Plant so that it met industry codes, standards, and good construction practices; and

d. Otherwise failing to perform its duties and obligations as general contractor.

*Id.* at ¶ 50. Wells' Dairy alleges that, as a result of these negligent acts and/or omissions, on or about March 27, 1999, the liquid ammonia circulation system catastrophically failed at the Plant, flooding the engine room with liquid ammonia, and resulting in an explosion that caused damage to Wells' Dairy's business and property. *Id.* at ¶ 51. Again, as relief on this claim, Wells' Dairy seeks damages to compensate it for its loss, interest as provided by law, costs, fees, and any other relief the court deems appropriate. *Id.,* prayer to Count VII.

As the Iowa Supreme Court recently explained,

The tort of negligence has developed into a broad and open-ended cause of action.... [A] cause of action for negligence may find support in most any conduct. Although the familiar elements of duty, breach of care, proximate cause, and damages must always be established, most any circumstances not exempted by a special rule or a statute can be used to prove these elements.

*Sain v. Cedar Rapids Community Sch. Dist.,* 626 N.W.2d 115, 122 (Iowa 2001) (citations omitted); *see also Kolbe v. State,* 625 N.W.2d 721, 725 (Iowa 2001) ("To prove their negligence claim, the Kolbes must establish (1) the State owed them a duty; (2) the State breached or violated that duty; (3) this breach or violation was a proximate cause of their injuries; and (4) damages."). Again, it is readily apparent that Wells' Dairy has pleaded each and every element of its negligence claim against Livermore. *Compare Anderson,* 724 F.2d at 84. Therefore, it cannot be said that, on the face of the complaint, there is such a flaw in the pleading of this claim that there is no " 'reasonable basis for asserting that state law might impose liability on the resident defendant under the facts alleged.'" *Foslip,* 92 F.Supp.2d at 903 (standard for fraudulent joinder) (quoting *Commercial Sav. Bank,* 939 F.Supp. at 680). Moreover, while RVS also asserts that some of the facts alleged in support of this negligence claim are not true, RVS has done no more than generate a factual dispute on the elements of this claim. Such a factual dispute does not satisfy RVS's " 'heavy burden of proving fraudulent joinder,' " especially where " 'all doubts should be resolved in favor of re-

mand.'" *Id.* (again quoting *Commercial Sav. Bank,* 939 F.Supp. at 680).

Thus, looking only at the face of the pleadings, this action should be remanded to state court, because defendant Livermore was not fraudulently joined. However, while *Anderson* supports a "face of the pleadings" rule, the court in *Anderson* was not presented with the question of whether jurisdictional discovery is ever permissible before disposition of removal/remand issues hinging on alleged fraudulent joinder. The court will consider that question next, in light of RVS's motion to take limited discovery on jurisdictional issues.

### 3. *"Piercing the pleadings"*

In addition to various cases in which the court apparently permitted discovery on jurisdictional issues before resolving the "fraudulent joinder" issue—or at least, cases in which some discovery had taken place before the issue was presented to the court[3]—there is a line of cases from the Fifth Circuit Court of Appeals discussing the propriety of "piercing the pleadings" in the determination of "fraudulent joinder" issues. Most recently, in *Badon v. RJR Nabisco, Inc.,* 224 F.3d 382 (5th Cir.2000), the Fifth Circuit Court of Appeals stated the principle as follows:

> Plaintiffs argue that because removal was predicated on fraudulent joinder and depended on piercing their pleadings that therefore the case was not initially removable and is accordingly governed by the second paragraph of section 1446(b). We reject this contention. *Ever since a time many years prior to 1988 we have consistently recog-*

nized that diversity removal may be based on evidence outside the pleadings to establish that the plaintiff has no possibility of recovery on the claim or claims asserted against the named resident defendant and that hence such defendant is fraudulently joined and his citizenship must be disregarded for jurisdictional purpose[s]. See, e.g., Keating v. Shell Chemical Co., 610 F.2d 328, 333 (5th Cir.1980); Burden v. General Dynamics Corp., 60 F.3d 213, 217 (5th Cir.1995). See also, e.g., LeJeune v. Shell Oil Co., 950 F.2d 267, 271 (5th Cir.1992) ("In this circuit, a removing party's claim of fraudulent joinder to destroy diversity is viewed as similar to a motion for summary judgment.... A court is to pierce the pleadings to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties"); Carriere v. Sears, Roebuck and Co., 893 F.2d 98, 100 (5th Cir.), cert. denied, 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990) ("When determining fraudulent joinder, the district court may look to the facts as established by summary judgment evidence as well as the controlling state law").

Thus it is clear that although a state court complaint on its face may allege a state law claim against an in-state defendant that does not preclude it from being removable (by the non-resident defendant), when filed, if the plaintiff's pleading is pierced and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on

---

3. For example, RVS relies on this court's decision in *Commercial Savings Bank v. Commercial Federal Bank,* 939 F.Supp. 674 (N.D.Iowa 1996), in which this court observed, "It is a well-established principle that a defendant seeking removal is entitled to present facts to show fraudulent joinder." *Commercial Sav. Bank,* 939 F.Supp. at 677 n.

1. However, the fact that a defendant seeking removal is entitled to *present* such facts does not necessarily translate into a requirement that the defendant be permitted to seek such facts in limited discovery once the action is removed on the basis of fraudulent joinder and a motion to remand is filed asserting joinder was not fraudulent.

that claim against the in-state defendant.

*Badon,* 224 F.3d at 389–90 (emphasis added). In *Badon,* the court recounted how emphatically it had stated this rule that the pleadings may be pierced to determine fraudulent joinder:

> We stated in *Burden,* "Our decisions subsequent to *B. Inc. v. Miller Brewing Co.,* 663 F.2d 545 (5th Cir.1981) have consistently maintained that a district court may look to evidence outside of the pleadings in determining a fraudulent joinder claim.... Lest there remain even a shadow of a doubt as to this circuit's position, we reiterate—in hopes that further pronouncement will not be necessary—that in testing for fraudulent joinder the district court in its discretion may 'pierce the pleadings'.... [fraudulent joinder is established if the summary judgment type evidence demonstrates that] 'as a matter of law, there [is] no reasonable basis for predicting that the plaintiff might establish liability against a named in-state defendant in state court.' "*Id.* (footnote omitted).

*Badon,* 224 F.3d at 389 n. 10; *see also Ford v. Elsbury,* 32 F.3d 931, 935 (5th Cir.1994) ("[F]raudulent joinder claims can be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony.") (quoting *Carriere,* 893 F.2d at 100). At least two other Circuit Courts of Appeals permit looking beyond the face of the pleadings. *See Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.) (although determination of the propriety of removal ordinarily depends only upon the plaintiff's pleadings, in the case of fraudulent joinder, the court may "go somewhat further. 'The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent.' ") (quoting *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987)), *cert. denied,* 525 U.S. 963, 119 S.Ct. 407,

142 L.Ed.2d 330 (1998); *Fowler v. Safeco Ins. of Am.,* 915 F.2d 616, 617 (11th Cir. 1990) ("Defendants have the opportunity to submit affidavits, depositions, or other evidence to support removal.").

These decisions permitting "piercing the pleadings" to determine fraudulent joinder, however, do not necessarily translate into a rule that the district court must permit limited discovery on jurisdictional issues, in order to allow the party asserting fraudulent joinder to assemble such "summary judgment type evidence," because "piercing the pleadings," even in the Fifth Circuit, is a matter of the district court's discretion. *See Badon,* 224 F.3d at 389 ("[W]e have consistently recognized that diversity removal *may* be based on evidence outside the pleadings to establish that [a] defendant is fraudulently joined....") (emphasis added); *Burden,* 60 F.3d at 217 ("[I]n testing for fraudulent joinder *the district court in its discretion may 'pierce the pleadings'....* ") (emphasis added). Moreover, even though the Fifth Circuit Court of Appeals permits "piercing the pleadings" to determine whether or not a resident defendant has been fraudulently joined, that court has "cautioned against 'pretrying a case to determine removal jurisdiction,' " recognizing "piercing the pleadings" in cases involving fraudulent joinder as a limited exception to that rule, allowing the submission of "summary judgment type" evidence. *Hart v. Bayer Corp.,* 199 F.3d 239, 246 (5th Cir. 2000) (quoting *Carriere v. Sears, Roebuck and Co.,* 893 F.2d 98, 100 (5th Cir.), *cert. denied,* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990)); *Ford,* 32 F.3d at 935 (same). Thus, the question becomes, under what circumstances should discovery be permitted before the court rules on the issue of whether or not a resident defendant has been fraudulently joined?

#### 4. Predetermination discovery

##### a. Guidance from precedent

RVS contends that *Ford v. Elsbury*, 32 F.3d 931 (5th Cir.1994), stands for the proposition that the court may permit limited discovery of jurisdictional facts before resolving the "fraudulent joinder" issue, and may even grant summary judgment *sua sponte* in favor of the fraudulently joined defendant. In *Ford*, the court set out the procedural background, in pertinent part, as follows:

> Although complete diversity was ostensibly lacking because the plaintiffs and the individual defendants were Louisiana citizens, the defendants claimed that Moore and Elsbury had been fraudulently joined. Plaintiffs filed a motion to remand. After limited discovery, the district court denied the motion to remand and *sua sponte* granted summary judgment in favor of Moore and Elsbury.

*Ford*, 32 F.3d at 933. Although the district court permitted limited discovery, the propriety of that decision was simply not before the Fifth Circuit Court of Appeals on appeal. Rather, "[t]he Ford plaintiffs complain[ed] on appeal that the district court erred in dismissing the claims against Elsbury and denying the motion to remand." *Id.* The Fifth Circuit Court of Appeals reiterated its rule that "piercing the pleadings" is appropriate to resolve a question of fraudulent joinder, without ever stating or suggesting that discovery is required, let alone identifying any circumstances in which discovery is appropriate, before resolving that question. *Id.* at 935. The appellate court ultimately concluded that the district court had improperly found fraudulent joinder after improperly disregarding evidence submitted with a "motion to reurge" remand, which the court found generated a factual dispute on the basis for the liability of individual defendant Elsbury. *See id.* at 936–39.

Thus, *Ford* is not instructive on whether, in what circumstances, or to what extent jurisdictional discovery should be permitted before resolving the question of whether or not a defendant has been "fraudulently joined."

One court to confront more directly the question of whether or not to permit jurisdictional discovery before ruling on fraudulent joinder issues is the district court in *Wright v. American General Life & Accident Insurance Company*, 136 F.Supp.2d 1207 (M.D.Ala.2001). In *Wright*, a decision of a district court in the Eleventh Circuit, a circuit in which "piercing the pleadings" is also expressly permitted, the court considered whether the plaintiffs had fraudulently joined a defendant by asserting a "fraudulent suppression" claim against that defendant. *Wright*, 136 F.Supp.2d at 1213. The defendant sought discovery on the "fraudulent suppression" issue before the court ruled on the fraudulent joinder issue. In *Wright*, the court's entire discussion of the issue of permitting discovery consisted of the following:

> American General has asked this court to allow it to conduct jurisdictional discovery. The court cannot discern how discovery conducted by American General, presumably of the Plaintiff, will aid American General, or this court, in evaluating a claim of fraudulent suppression where the information was not in the possession of the Plaintiff, but allegedly in the possession of the individual agents.
>
> Accordingly, this request is due to be DENIED.

*Wright*, 136 F.Supp.2d at 1215. Although brief, this decision is instructive, in that it demonstrates that the court is not required to permit jurisdictional discovery if the party from whom such discovery is sought simply is not in possession of pertinent information. A corollary of this rule

would seem to be that discovery is not required if the removing defendant otherwise has available to it information that would allow it to demonstrate that joinder of the resident defendant is fraudulent. In the case before this court, RVS contends that Wells' Dairy is indeed in possession of the pertinent information, that is, whether or not there is any basis for its claims against Livermore, and has concealed that information so far. However, as RVS's submission of the affidavits of the Livermores demonstrates, RVS already has access to much of the information that would establish a factual basis for its contention that defendant Livermore has been fraudulently joined.

### b. Guidance from applicable standards

The court finds no other decisions directly on point, but will assume, for the sake of argument, that it has the discretion to permit or refuse to allow discovery concerning fraudulent joinder before ruling on the present motion to remand. Therefore, the question is, what should guide the court's exercise of that discretion? To determine when discovery should be allowed, the court finds it is appropriate to return to a more detailed examination of the standards applicable to fraudulent joinder determinations, hoping for guidance on the question of when discovery is appropriate from the standards for actual disposition of the fraudulent joinder issue.

### i. Comparison of "fraudulent joinder" and Rule 12(b)(6) standards.

In many respects, the standards for determining a question of fraudulent joinder are analogous to the standards applicable to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Both standards require the court to look primarily at the face of the plaintiff's complaint at the time the challenge is made. *See Anderson,* 724 F.2d at 84 (fraudulent joinder should be determined on the face of the pleadings); *and compare Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (in considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged on the face of plaintiff's complaint are true, and must liberally construe those allegations); *Gross v. Weber,* 186 F.3d 1089, 1090 (8th Cir.1999) *("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant].").* Indeed, *in both circumstances, the plaintiff's allegations must be taken as true, even where the court is permitted to "pierce the pleadings."* See *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99 *(Rule 12(b)(6));* *Gross,* 186 F.3d at 1090 *(same);* and compare *Hart v. Bayer Corp.,* 199 F.3d 239, 247–48 (5th Cir. 1999) *(even where the court can "pierce the pleadings" to determine fraudulent joinder, the factual allegations of the complaint must be taken as true).* Furthermore, *various courts have held that, in the context of "fraudulent joinder," the standard is* even more favorable *to the plaintiff than the standard applicable to a ruling on a motion to dismiss under Rule 12(b)(6).* See *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 424 (4th Cir.1999) *("The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor. [Citation omitted.] This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R.Civ.P. 12(b)(6).") (citing Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 852 (3d Cir. 1992)).

In the context of a Rule 12(b)(6) motion, because the plaintiff's factual allegations must be taken as true, the question is whether or not there is some "insuperable bar" to the plaintiff's claim, that is, a barrier as a matter of law, not simply a dispute

over the truth of the plaintiff's factual allegations in support of a claim. *See Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 (8th Cir.1997); *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir. 1995); *see also Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations). The same principle would seem to be equally applicable to determination of fraudulent joinder, when the plaintiff's factual allegations must also be taken as true, and the standard is even more favorable to the plaintiff.

Moreover, in *Chesapeake & Ohio Railway Company v. Cockrell,* 232 U.S. 146, 34 S.Ct. 278, 58 L.Ed. 544 (1914), the Supreme Court appeared to distinguish between challenges to "jurisdictional" facts and disputes about facts going to the merits of the claims against the non-diverse defendants in the context of fraudulent joinder:

> Putting out of view, as must be done, the epithets and mere legal conclusions in the petition for removal, it may have disclosed an absence of good faith on the part of the plaintiff in bringing the action at all, but it did not show a fraudulent joinder of the engineer and fireman. With the allegation that they were operating the train which did the injury standing unchallenged, the showing amounted to nothing more than a traverse of the charges of negligence, with an added statement that they were falsely or recklessly made and could not be proved as to the engineer or fireman. As no negligent act or omission personal to the railway company was charged, and its liability, like that of the two employees, was, in effect, predicated upon the alleged negligence of the latter, the showing manifestly went to the merits of the action as an entirety, and not to the joinder; that is to say, it indicated that the plaintiff's case was ill founded as to all the defendants. Plainly, this was not such a showing as to engender or compel the conclusion that the two employees were wrongfully brought into a controversy which did not concern them. As they admittedly were in charge of the movement of the train, and their negligence was apparently the principal matter in dispute, the plaintiff had the same right, under the laws of Kentucky, to insist upon their presence as real defendants as upon that of the railway company. We conclude, therefore, that the petition for removal was not such as to require the state court to surrender its jurisdiction.

*Chesapeake & Ohio Ry. Co.,* 232 U.S. at 153–54, 34 S.Ct. 278. Thus, the Court plainly distinguished between a mere "traverse" or challenge going to the merits of the action as an entirety and a challenge going to joinder of the non-diverse defendants, finding the latter plainly did not establish that the non-diverse defendants were improper parties to the action such that their joinder was "fraudulent," and leaving the merits to be tested by the trier of fact under Kentucky law. Similarly, some time ago, the Eighth Circuit Court of Appeals stated, "If there is doubt as to whether, under the state laws, a case of joint liability is stated, or if there is doubt whether the allegations with respect to the resident defendant are false, as when that question depends upon the credibility of witnesses and the weight of the evidence, the joinder is not fraudulent." *Morris v. E.I. Du Pont De Nemours & Co.,* 68 F.2d 788, 792 (8th Cir.1934). This decision again distinguishes between a properly "jurisdictional" challenge, and a mere dispute as to the merits of the claim against the non-diverse defendant.

In light of the favorableness of the fraudulent joinder standard to the plaintiff, the focus of the inquiry primarily on the

face of the plaintiff's pleadings, and the determination of the viability of the plaintiff's claims as a matter of *law*, not as a matter of *fact*, it seems inconsistent to allow extensive discovery of facts going to the merits of the plaintiff's claims against the non-diverse defendant in the context of fraudulent joinder. These standards also suggest that a distinction could be made concerning the discoverability of "jurisdictional" facts, which establish whether or not there is a basis for the court's diversity jurisdiction or whether or not the non-diverse defendant is a proper defendant in the action, and the discoverability at this stage of the proceedings of the factual allegations about the defendant's allegedly wrongful conduct. Such "jurisdictional facts" are independent of the truth of the plaintiff's allegations concerning the defendant's wrongful conduct, and it is the latter allegations that are to be taken as true at the Rule 12(b)(6) or removal/remand phase of the proceedings.

■ *ii. The "species" of fraudulent joinder.* The court finds further guidance on the question of allowing discovery in the nature of fraudulent joinder itself. There are at least two species of "fraudulent joinder": (1) "fraud in the recitation of jurisdictional facts"; and (2) the more common allegation of the absence of any possibility that the plaintiff has stated a claim against the resident defendant. *See, e.g., Heritage Bank v. Redcom Labs., Inc.,* 250 F.3d 319, 323 (5th Cir.2001); *Delgado v. Shell Oil Co.,* 231 F.3d 165, 179 (5th Cir.2000) ("To establish fraudulent joinder, the party crying foul must show that there is no reasonable probability of recovery against the joined party or that there has been outright fraud in the pleadings of jurisdictional facts."), *cert. denied,* —— U.S. ——, 121 S.Ct. 1603, 149 L.Ed.2d 470

(2001).[4] The court finds that whether or not discovery is warranted before the court rules on the fraudulent joinder issue may depend upon which species of fraudulent joinder is alleged in a particular case, and may also depend upon what is alleged to be the nature of the particular failing under that species.

■ As to the first species, outright fraud in recitation of jurisdictional facts, the "fraud" consists of knowingly—or possibly mistakenly—pleading that a defendant is a citizen of the same state as the plaintiff, when the defendant in fact is a citizen of a different state. *See, e.g., B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 n. 8 (5th Cir.1981) ("There have been no allegations of fraud in the plaintiff's pleading of jurisdictional facts [where] [a]ll parties concede that the plaintiff and four of the named defendants are Texas residents."). In other words, what is at stake with this species of fraudulent joinder is both the possibility of an actual "fraud" and facts that are truly "jurisdictional," in the sense that they are determinative of whether or not diversity of citizenship actually exists—a sort of "pure" jurisdictional challenge. Challenges to a court's subject matter jurisdiction pursuant to Rule 12(b)(1) are not restricted to the face of the pleadings. *See, e.g., Stevens v. Redwing,* 146 F.3d 538, 546 (8th Cir.1998) (the court may consider matters outside of the pleadings on a motion to dismiss pursuant to Rule 12(b)(1) to determine jurisdictional facts); *Deuser v. Vecera,* 139 F.3d 1190, 1191 n. 3 (8th Cir.1998) (same). By analogy, when fraudulent joinder involves fraudulent or mistaken pleading of "jurisdictional" facts, it seems to the court that "jurisdictional discovery" may be appropriate to go beyond the pleadings to deter-

---

**4.** The Eleventh Circuit Court of Appeals apparently recognizes a third species of "fraudulent joinder," described as "egregious mis-

joinder." *See, e.g., Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996).

mine the truth of the matter. This is so, for at least two reasons: (1) such discovery could properly be focused on "jurisdictional" facts concerning the purportedly non-diverse defendant's citizenship, that is, facts going to whether or not a federal court can hear the claims against that defendant as a matter of *law*, without straying into discovery concerning the factual merits of the plaintiff's claim; and (2) it is possible that the plaintiff has more information concerning the jurisdictional facts and has knowingly concealed those facts from the removing defendant in furtherance of a fraudulent joinder.[5] In short, discovery in cases involving this species of fraudulent joinder is likely to be appropriate to permit the removing defendant to discover the truth of allegations of citizenship, so that what otherwise might be both a lack of subject matter jurisdiction and a fraud upon the court can be revealed in a situation in which that information may not otherwise be available to the removing defendant or the court.

However, this conclusion does not support RVS's request to conduct limited discovery in this case. Although RVS contends that Wells' Dairy has "concealed" the factual basis, or lack of it, for its claims against Livermore, the court concludes that RVS has not asserted "fraud in the pleading of jurisdictional facts." RVS does not contend that Livermore is not in fact a citizen of Iowa, as alleged by Wells' Dairy. RVS's contention is only that Wells' Dairy has "concealed" the lack of merit in its claims against Livermore.

As opposed to the first species of fraudulent joinder, which involves an outright fraud, when the second species of fraudulent joinder—no reasonable possibility of stating a claim against the non-diverse defendant—is at issue, the term "fraudulent joinder" " 'is a term of art.' " *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir.2001) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). Joinder in such cases "is deemed fraudulent," as opposed to constituting an actual fraud. *Id.* In such circumstances, there is ordinarily an "insuperable bar" or legal defect in the plaintiff's claim against the non-diverse plaintiff—*i.e.*, the failing of the claim is obvious under applicable state law—not merely a perceived failing arising from a disagreement as to the merits of the plaintiff's claim against that defendant. The obvious failure of the claim under applicable state law may consist of failure to allege a factual basis for an element of the plaintiff's claim against the non-diverse defendant. *See, e.g., Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir.1983) (the defendant insurance agent was fraudulently joined in a breach-of-contract claim, because he was not alleged to be a party to the contract, and fraudulently joined in a libel claim, because, on the face of the complaint, he was "uninvolved" in the libel); *Johnson v. Heublein, Inc.*, 227 F.3d 236, 240 (5th Cir.2000) (the plaintiffs failed to allege any facts, such as "alter ego" liability for a corporation's misconduct, that would reasonably demonstrate that they had an independent or derivative cause of action against the non-diverse defendant); *and compare Hart v. Bayer Corp.*, 199 F.3d 239, 247–48 (5th Cir.2000) (the district court erred in finding fraudulent joinder where the district court con-

---

**5.** Although the purportedly non-diverse defendant is also a potential source of information on "jurisdictional facts" concerning its citizenship, if the purportedly non-diverse defendant is resistant to providing that information, there may be issues of collusion to bar federal jurisdiction, which may also warrant discovery. *Cf. In re Tobacco/Governmental Health Care Costs Litig.*, 100 F.Supp.2d 31, 40–41 (D.D.C.2000) (permitting discovery of possible cooperation between the plaintiff's and a defendant who did not consent to removal).

sidered only one legal theory for liability of an agent under Mississippi law, but failed to recognize that the plaintiffs had alleged exactly the factual basis for liability of an agent under another legal theory, whether or not that factual basis ultimately proved to be true, because the allegations had to be taken as true). The failing may also consist of pleading only a *legally insufficient* factual basis for an element of the claim against the non-diverse defendant. *See, e.g., Morris,* 236 F.3d at 1067–68 (because the plaintiff's negligent misrepresentation claim against the non-diverse plaintiff was based on representations that were not "material" or sufficiently specific to constitute more than "puffing," and thus the representations were not actionable as a matter of law, and, moreover, that failing in the pleadings was obvious under applicable state law, the non-diverse defendant was "fraudulently joined"); *and compare Badon v. RJR Nabisco, Inc.,* 236 F.3d 282, 285–86 (5th Cir.2000) (finding a non-diverse defendant was not fraudulently joined, where the Louisiana Supreme Court had declined to address certified questions of law, and doing its best to predict Louisiana state law, the federal appellate court concluded that there was a reasonable basis alleged for liability of the non-diverse defendant on the plaintiff's legal theory). The circumstances involved in these cases do not involve mere disagreement with the plaintiff's factual allegations, which again, must be taken as true, but failure of those allegations *taken as true* to include a necessary element to put the claim on the proper *legal* footing.

■ In most such cases, the court believes that no discovery would be required to assess such a *legal* impediment to the plaintiff's claim against the non-diverse defendant, any more than discovery is required to determine whether or not there is an "insuperable bar" to a claim on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See Parnes,* 122 F.3d at 546; *Frey,* 44 F.3d at 671. Such a failing appears on the face of the complaint. This conclusion, however, does not bar discovery in this case, because RVS does not disagree with Wells' Dairy's assertion that it has pleaded facts in support of all of the elements of its claims against Livermore. Rather, RVS contends that some of the facts Wells' Dairy has alleged simply are not true, and for that reason, there is no reasonable basis for asserting that liability could be imposed on Livermore.

■ The no-reasonable-possibility-of-stating-a-claim species of fraudulent joinder may also consist of pleading that the "status" of the non-diverse defendant is such that he, she, or it can be liable on the plaintiff's claim, when the non-diverse defendant in fact lacks such "status." Examples include disputes about whether or not the non-diverse defendant was the plaintiff's "employer," or whether or not the non-diverse defendant, rather than an out-of-state subsidiary or parent corporation, was a party to a contract with the plaintiff. *See, e.g., Jernigan v. Ashland Oil, Inc.,* 989 F.2d 812, 815 (5th Cir.) (analyzing "fraudulent joinder" in circumstances in which the plaintiff identified the wrong entity as his employer in terms of inability to state a claim against the named defendant), *cert. denied,* 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993). Although there may be underlying fact issues concerning the defendant's "status" that are susceptible to discovery prior to ruling on the fraudulent joinder issue, the facts at issue in such cases can still properly be described as "jurisdictional," because they go to the question of whether the purportedly non-diverse defendant is a proper party to the action, rather than going to the "merits" of the plaintiff's allegations concerning the defendant's allegedly wrongful conduct. Discovery of such

"jurisdictional" facts is more likely to be *necessary* before the court rules on the question of fraudulent joinder of the non-diverse defendant, because the facts concerning the non-diverse defendant's "status" may not be apparent on the face of the complaint. Discovery may also be more *appropriate* in such cases, because the factual issues generally do not go to the "merits" of the plaintiff's claim, *i.e.*, to the plaintiff's allegations concerning the wrongful conduct of the non-diverse defendant, which the standards applicable to fraudulent joinder questions indicate must be taken as true. *But see Ford v. Elsbury*, 32 F.3d 931 (5th Cir.1994).[6] Finally, such discovery can probably be limited in a reasonable and manageable fashion, because the "status" issue does not necessarily invite inquiry into the "merits" of the factual allegations concerning the non-diverse defendant's allegedly wrongful conduct.

 RVS made what might appear at first blush to be a "status" challenge to the claims against Livermore. RVS contends that Livermore was not a "general contractor" in the ordinary sense, with ultimate responsibility, and hence liability, for the construction of the Plant, but instead played more of a "consultant" role, providing oversight on the reasonableness of building costs. However, the court finds that the disagreement is really about *what* work Livermore was to perform under its agreement with Wells' Dairy or in fact did perform in the construction of the Plant, *i.e.*, a question of whether Livermore's "conduct" gives rise to liability, not a question of whether Livermore's "status" permits or prevents it from being liable on Wells' Dairy's breach-of-contract and negligence claims. Thus, the facts in dispute are not truly "jurisdictional," but go directly to the factual merits of Wells' Dairy's claims against Livermore.

Moreover, the court finds that discovery on this issue is highly unlikely to be dispositive of whether or not Wells' Dairy has a reasonable basis for asserting that state law might impose liability on Livermore under the facts alleged, *see Foslip*, 92

6. *Ford v. Elsbury*, 32 F.3d 931 (5th Cir.1994), is perhaps an example of a case in which facts going to "status" permitting liability blur with facts going to liability. In *Ford*, the district court apparently found it appropriate to permit discovery on the question of whether the non-diverse defendant could be held individually liable as a plant manager under Louisiana law—*i.e.*, a "status" challenge. *See Ford*, 32 F.3d at 933. However, that determination was bound up in part with the merits of the claim, because under Louisiana law, a plant manager's individual liability turned on whether or not the plant manager or others delegated with due care the responsibility of safe maintenance and operation of the machinery that caused an explosion and whether or not the plant manager was aware of or should have been aware of the risk of harm, but failed to respond to the risk in the manner in which a reasonably prudent plant manager would have responded in the same or similar circumstances. *Id.* at 936–39. Thus, the question of whether or not a claim would lie against the non-diverse defendant depended not just on whether or not he was a "plant manager," *i.e.*, his "status" alone, but whether or not he engaged in certain conduct, which approaches a determination of the "merits" of the plaintiffs' claims against him.

However, as this court reads *Chesapeake & Ohio Railway Company*, as explained above, allegations that the non-diverse defendant was the plant manager, *i.e.*, that he had the "status" to be individually liable, coupled with allegations going to the merits of his liability, *i.e.*, that he failed to use due care in delegating responsibility for safe maintenance and operation of machinery and was aware of a risk of harm, but failed to respond appropriately, would suffice to establish that joinder of the non-diverse plant manager was not fraudulent, because challenges to the allegations beyond "status" would amount only to a "traverse" or challenge to the merits of the claim against the non-diverse plant manager. *See Chesapeake & Ohio Ry. Co.*, 232 U.S. at 153–54, 34 S.Ct. 278; *see also supra*, p. 1035.

F.Supp.2d at 903 (standard for fraudulent joinder) (quoting *Commercial Sav. Bank,* 939 F.Supp. at 680), where Wells' Dairy has generated a genuine issue of material fact as to Livermore's "status" as general contractor for construction of the Plant by submitting the affidavit of David Wells, averring that Livermore was hired in about 1991 as the general contractor for construction of the Plant, with supporting documentation in the form of invoices, dated January 1992 through July 1992, from O.H. Livermore Construction to Wells' Dairy for "GENERAL CONTRACTOR SERVICE, NEW ICP FACILITY." *See* Plaintiff's Hearing Exhibit 1, Affidavit of David Wells. Determination of the propriety of removal on the basis of fraudulent joinder or the necessity of remand is not the appropriate procedural footing for resolving these fact issues going to the merits of Wells' Dairy's claims against Livermore. *See Morris,* 68 F.2d at 792 ("If there is doubt as to whether ... the allegations with respect to the resident defendant are false, as when that question depends upon the credibility of witnesses and the weight of the evidence, the joinder is not fraudulent.").

Finally, as is the case here, the assertion that the plaintiff cannot possibly state a claim against the non-diverse defendant may be based on the removing defendant's contention that the plaintiff cannot, as a matter of *fact,* prevail upon its claims against that defendant, *i.e.,* a direct challenge to the "merits" of the plaintiff's claims against the non-diverse defendant. As the preceding discussion suggests, discovery is not appropriate in such a case, because the court is to *take as true* the factual allegations going to the merits of the plaintiff's claims against the non-diverse defendant, and where there is a reasonable possibility that those factual allegations state a claim under state law— even where the truth of those allegations is challenged—fraudulent joinder cannot be

shown, and the truth of the allegations and merits of the claim under state law are properly left to the trier of act. *See Chesapeake & Ohio Ry. Co.,* 232 U.S. at 153–54, 34 S.Ct. 278; *Morris,* 68 F.2d at 792; *see also Foslip,* 92 F.Supp.2d at 902–03.

In summary, from an examination of the standards applicable to determination of fraudulent joinder questions and from an examination of the species of fraudulent joinder, the court reaches the following conclusions about when discovery is appropriate before ruling on the fraudulent joinder issue. As a general principle, discovery is only appropriate where it goes to "jurisdictional" facts, rather than to the merits of the claim against the non-diverse defendant. More specifically, where actual fraud in the recitation or pleading of jurisdictional facts is alleged, discovery is most likely to be appropriate to determine the truth of the jurisdictional basis for the claim against the non-diverse defendant. Where fraudulent joinder instead involves the plaintiff's ability to state a claim against the purportedly non-diverse defendant, whether or not discovery is appropriate depends upon the nature of the alleged failure of the claim, again guided by the distinction between challenges to "jurisdictional" facts or facts going to the merits of the claim. If the removing party asserts that the plaintiff has failed to allege facts, or legally sufficient facts, in support of an element of a claim, determination of the fraudulent joinder issue is unlikely to require any discovery, because the insufficiency of the claim will be apparent on the face of the pleadings. However, where the removing party asserts that the non-diverse defendant does not have the proper "status" to be liable on the plaintiff's claim, discovery may be appropriate to determine whether the defendant is a proper party to the action, *i.e.,* a matter going to jurisdiction over the party rather than the merits of the claim against that party. Finally, where the fraudulent joinder challenge is

premised on a challenge to the truth of the factual allegations going to the merits of the plaintiff's claim against the non-diverse defendant, discovery is least likely to be appropriate, because the factual allegations in question are to be taken as true under applicable standards. Applying these principles here, the court finds that discovery is not appropriate in this case, assuming the court would otherwise have the discretion to allow discovery before ruling on Wells' Dairy's motion to remand, because RVS's fraudulent joinder challenge goes directly and almost exclusively to the merits of Wells' Dairy's claim against Livermore, not to "jurisdictional" questions concerning Livermore's citizenship or status as a proper defendant in this action.

### C. Wells' Dairy's Motion To Remand

Resolving Wells' Dairy's motion to remand requires little more than reiteration of salient points from the prior discussion. Whatever RVS's challenges to the truth of Wells' Dairy's allegations against Livermore may be, that challenge is insufficient to carry RVS's burden to establish that Livermore has been fraudulently joined. *See Foslip,* 92 F.Supp.2d at 903 (removing party bears the heavy burden to show fraudulent joinder). Rather, as the court explained above, in Section II.B.2, Wells' Dairy has alleged a factual basis for each and every element of its breach-of-contract and negligence claims against Livermore and, at this stage of the proceedings, the court must take those allegations as true on their face. *See Anderson,* 724 F.2d at 84. Taking those allegations as true, there is at least a reasonable basis for asserting that Iowa law might impose liability on Livermore, the resident defendant, and

Livermore's joinder in this action thus was not fraudulent. *See Foslip,* 92 F.Supp.2d at 903; *see also Chesapeake & Ohio Ry. Co.,* 232 U.S. at 153, 34 S.Ct. 278 (a challenge to the merits of a claim is "[p]lainly . . . not such a showing as to engender or compel the conclusion that [the resident defendant was] wrongfully brought into a controversy which did not concern [it]"); *Morris,* 68 F.2d at 792 ("If there is doubt as to whether . . . the allegations with respect to the resident defendant are false, as when that question depends upon the credibility of witnesses and the weight of the evidence, the joinder is not fraudulent."). In these circumstances, Wells' Dairy has the right, under the laws of Iowa, to insist upon the presence of Livermore in this litigation as a real defendant. *Chesapeake & Ohio Ry. Co.,* 232 U.S. at 153, 34 S.Ct. 278. Removal here was improper, and the action must be remanded to the Iowa District Court for Plymouth County.[7]

### D. Attorneys' Fees And Costs

In the Judicial Improvements and Access to Justice Act of 1988, Congress greatly expanded the discretion afforded to federal district courts to award costs and attorneys' fees pursuant to 28 U.S.C. §§ 1446 and 1447 where an action has been improperly removed to a federal court. *See* Pub.L. 100–702, Title X, § 1016(c), 102 Stat. 4670. The amended version of § 1447(c) provides, in part, that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Central to the determination of whether attorneys' fees should be granted is the propriety of the defendant's deci-

---

7. The court reaches the same conclusion whether or not it considers the affidavits of RVS's counsel and Bob and O.H. Livermore, which Wells' Dairy asserts should be stricken from the record. Consequently, Wells'

Dairy's written motion to strike the affidavit of RVS's counsel and its oral motion to strike, at least in part, the affidavits of the Livermores will be denied as moot.

sion to remove." *Garcia v. Amfels, Inc.,* 254 F.3d 585, 587 (5th Cir.2001). Courts have held that " '[a]n award of attorney's fees is inappropriate ... where the defendant's attempt to remove the action was fairly supportable and where there has been no showing of bad faith.' " *Lathigra v. British Airways, PLC,* 41 F.3d 535, 540 (9th Cir.1994) (quoting *Schmitt v. Insurance Co. of N. Am.,* 845 F.2d 1546, 1552 (9th Cir.1988)); *and compare Daleske v. Fairfield Communities, Inc.,* 17 F.3d 321, 324 (10th Cir.) ("[I]f the district court had refused to award fees [under § 1447(c) ] in the absence of evidence of bad faith, it would have employed an incorrect legal standard," because the 1988 amendments "negate[d] any requirement that the removal be in bad faith before fees can be awarded"; however, the district properly refused to award fees when it made express findings that there had been a fair basis for removing the case and that the defendant acted in good faith), *cert. denied,* 511 U.S. 1082, 114 S.Ct. 1832, 128 L.Ed.2d 461 (1994). On the other hand, the Fifth Circuit Court of Appeals found no abuse of discretion in awarding fees and costs against the removing defendant upon remand of the action where Fifth Circuit law explicitly prohibited removal on the ground asserted, and the removal of the case was therefore "frivolous." *Garcia,* 254 F.3d at 587.

As to the amount of fees to be awarded, the Seventh Circuit Court of Appeals recently explained,

> Section 1447(c) is unusual among fee-shifting statutes. Unlike the numerous statutes that authorize the recovery of "reasonable" attorney's fees, *see, e.g., Delaware Valley Citizens' Council,* 478 U.S. at 562, 106 S.Ct. 3088, 92 L.Ed.2d 439; *Marek v. Chesny,* 473 U.S. 1, 43, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) (appendix to Brennan, J., dissenting), § 1447(c) expressly limits fee awards to actual outlays—specifically, to "any ac-

> tual expenses, including attorney fees, incurred" (emphasis added). The mention of "actual" and "incurred" is significant. Neither word appeared in the statute's earlier version that authorized only "the payment of just costs." As amended in 1988, § 1447(c) now explicitly includes "attorney fees" among the "actual expenses" that can be awarded. The statutory change makes clear that § 1447(c) constitutes an alternative means to reimburse the victorious party without resorting to Rule 11. The legislative history of this change is scanty (a mere two paragraphs), but it reveals that "the proposed amendment to section 1447(c) will ensure that a substantive basis exists for requiring payment of actual expenses incurred in resisting an improper removal; civil rule 11 can be used to impose a more severe sanction when appropriate." H.R.Rep. No. 889, 100th Cong., 2d Sess. 72, reprinted in 1988 U.S.C.C.A.N. 5982, 6033.

> \* \* \* \* \* \*

> .... This provision specifies that the fees awarded must be the "actual" fees that were "incurred." This formulation more closely approaches the Uniform Relocation Act or the Equal Access to Justice Act than the civil rights statutes that speak of a "reasonable attorney's fee as part of the costs." *Cf. Neal v. Honeywell, Inc.,* 191 F.3d 827, 833 (7th Cir.1999) (concluding that the formula in the False Claims Act authorizing "reasonable attorneys' fees" as part of "damages" has "greater affinity to § 1988 than to the Equal Access to Justice Act"). Indeed, we have likened § 1447(c) to Fed.R.Civ.P. 37(a)(4), the fee-shifting rule requiring the loser in certain discovery disputes to pay his opponent's legal expenses. Both rules contemplate that the victor should recoup his full outlay. As we reiterated in *Garbie [v. DaimlerChrysler Corp.],* 211 F.3d [407,] 411 [ (7th Cir.2000) ], "The

rationale of fee-shifting rules is that the victor should be made whole—should be as well off as if the opponent had respected his legal rights in the first place." Improper removal prolongs litigation (and jacks up fees). Under the American Rule parties bear their expenses in one court system, "but when their adversary wrongfully drags them into a second judicial system the loser must expect to cover the incremental costs." *Id.* For the State of Wisconsin, those incremental costs include its actual attorney's fees incurred (a proportional share of the salaries of its attorneys handling the removal) plus related overhead costs.

We vacate the judgment as to the amount of attorney's fees awarded to the state and remand so that the district court may determine the actual amount of fees incurred. The state bears the burden of proving these amounts. The district court, however, has discretion "to tailor the documentation requirement" according to the stakes involved, *see Garbie,* 211 F.3d at 411; *Ustrak v. Fairman,* 851 F.2d 983, 987 (7th Cir. 1988), lest the resources devoted to detailing entitlements outstrip the expenses received under § 1447(c).

*Wisconsin v. Hotline Indus., Inc.,* 236 F.3d 363, 366–68 (7th Cir.2000).

In this case, the court finds that RVS's removal of this action was not based on "frivolous" grounds, but was instead based on a fairly supportable, if ultimately unsuccessful, argument and that RVS acted in good faith. Therefore, the court declines, in its discretion, to award any attorneys' fees or costs to Wells' Dairy pursuant to 28 U.S.C. § 1447(c) for seeking the remand of this action.

## III. CONCLUSION

Upon review of the standards for determination of fraudulent joinder issues and drawing guidance from various precedents, the court concludes that this is not a case in which even limited discovery should be permitted before ruling on the fraudulent joinder issues. Rather than a challenge to "jurisdictional" facts, which might properly be the subject of such discovery, RVS's fraudulent joinder challenge goes directly to the merits of Wells' Dairy's claims against the resident defendant, Livermore, but it is precisely the facts challenged in this case that must be taken as true under the applicable standards. Therefore, the court will deny RVS's motion to take limited discovery on the fraudulent joinder issue. As to Wells' Dairy's motion to remand, the court finds that there is at least a reasonable basis for asserting that Iowa law might impose liability on the resident defendant, Livermore, under the facts alleged, such that joinder of Livermore was not fraudulent and does indeed prevent removal. Wells' Dairy's motion to remand will be granted.

THEREFORE,

1. RVS's June 4, 2001, motion to take limited discovery on the issue of the fraudulent joinder of Livermore is **denied.**

2. Wells' Dairy's June 15, 2001, motion to remand this action to state court is **granted** and this action is **remanded to the Iowa District Court for Plymouth County.** However, Wells' Dairy's request for attorneys' fees and costs for seeking the remand of this action is **denied.**

3. Wells' Dairy's August 2, 2001, motion to strike the affidavit of RVS's counsel and Wells' Dairy's August 6, 2001, oral motion to strike, at least in part, the affidavits of Bob and O.H. Livermore, are **denied as moot.**

**IT IS SO ORDERED.**